**Betsabe Ivonne Niessen VELASCO, Appellant,**

v.

**Alfonso Ignacio AYALA, Appellee.**

No. 01–07–01053–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 19, 2009.

Anita E. Kadala, John A. Halbleib, Weil, Gotshal & Manges LLP, Houston, TX, Arthur C. D'Andrea, Weil, Gotshal & Manges, Austin, TX, for Appellant.

Alfonso Ignacio Ayala, Spring, TX, for Appellee.

Panel consists of Justices JENNINGS, HIGLEY, and SHARP.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Betsabe Ivonne Niessen Velasco, appeals from the trial court's denial of her motion for new trial, in which she attacked the underlying decree of divorce and termination of her parental rights as void for lack of personal jurisdiction.

On appeal, Betsabe presents two issues. In her first issue, she contends that she was cited by publication using an incorrect name. In her second issue, Betsabe contends that, in his affidavit to procure service by publication, appellee, Alfonso Ignacio Ayala, "falsely stated" that Betsabe's address was unknown and that he had used due diligence in attempting to serve her. Betsabe contends that Alfonso "did not satisfy constitutional due diligence requirements because ... he never once attempted to personally serve" her through the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters" (the "Hague Service Convention"), which is the "exclusive method of service on a Mexican resident."

We reverse and remand.

## Background

Betsabe and Alfonso,[1] both citizens of Mexico, were married in 1996 and lived in Mexico City. In 1998, their daughter, B.A., was born. In October 2003, Alfonso brought B.A. to Houston to visit his family. In November 2003, Betsabe came to Houston to visit and stayed with Alfonso and B.A. at Alfonso's sister's house. Betsabe believed that she, Alfonso, and B.A. would be returning to their home in Mexico City.

On or about February 13, 2004, Betsabe learned that Alfonso did not intend to return to Mexico and that he intended to keep B.A. with him in Houston. Betsabe and Alfonso argued and it escalated into a physical fray. According to Alfonso's testimony and affidavit, Betsabe attempted to drag, then five-year-old, B.A. out of the house. The police arrived, handcuffed Betsabe, and removed her to a women's shelter in Houston.

Betsabe, who does not speak any English, remained at the shelter for three months. During that time, Alfonso removed B.A. from school, and Betsabe could not find them. By May 2004, Betsabe had little money left and her travel visa was about to expire. She returned to the couple's home in Mexico City, where she sought legal counsel and began proceedings through the Hague Convention on International Child Abduction.[2]

In the interim, on April 21, 2004, Alfonso filed an original petition for divorce, seeking joint conservatorship of B.A. and child support from Betsabe. He named Betsabe, who is "Betsabe Ivonne Niessen Velasco," as respondent "Betsabe Ivonne Ayala" and stated that she resided in Har-

---

1. Pursuant to Texas Rule of Appellate Procedure 38.1(g), we "accept as true the facts stated unless another party contradicts them." *See* TEX R.APP. P. 38.1(g). Alfonso did not file a brief in this appeal.

2. International Child Abduction Remedies Act, § 2, 42 U.S.C.A. § 11601 et seq.

ris County. Alfonso did not request service of process at that time.

In his first amended petition for divorce, filed July 9, 2004, Alfonso sought joint managing conservatorship of B.A. and the right to determine her primary domicile, but without any child support from Betsabe. Alfonso named Betsabe as respondent "Betsabe Ivonne Ayala," who resided at "Eje Central Lazaro Cardenas No. 616–C 103, Col. Alamos C.P. 03100 Mexico D.F., Mexico." Alfonso requested the Harris County District Clerk to send service of process via certified mail to that address. The citation and petition sent were in English. The "Officer's Return for Certified Mail" reflects that it was "returned unexecuted," postmarked "Returned for Termination of Law."

On September 20, 2004, Alfonso filed a second amended petition, seeking a divorce and termination of Betsabe's parental rights. In his petition, Alfonso alleged that Betsabe had "voluntarily left the child alone or in the possession of another without providing adequate support of the child and remained away for a period of at least six months"; had "engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangers the physical or emotional well-being of the child"; and had "knowingly engaged in criminal conduct that has resulted in the Respondent's conviction of an offense and confinement or imprisonment and inability to care for the child for not less than two years from the date" the petition was filed. Alfonso stated in his petition that "Betsabe Ivonne Ayala, Respondent, resides in: Eje Central Lazaro Cardenas No. 616–C 103, Col. Alamos C.P. 03100 Mexico D.F., Mexico."

On the same day, Alfonso moved for citation by publication. By his affidavit, Alfonso attested, in pertinent part, as follows:

Before my family moved to the Houston area October 24, 2003, my wife had a history of abusing our child by slapping her in the face and neck repeatedly on a weekly basis.

On October 24, 2003, I, my wife and our child came to the United States. We all have the appropriate visas to be here. On or about February 13, 2004, my wife attacked our 5 year old daughter again. The police were called and she was arrested. My daughter and I have not seen her since that day.

. . . .

My wife called me and told me that she went to Kansas for a month or so to stay with her sister and then returned to the Houston area. I filed for divorce on April 21, 2004. My wife told me that she wanted the divorce and she didn't want to have anything to do with me or our daughter, so I told her to call my attorney. She told my attorney that she would sign papers as long as she didn't have to pay child support and attorney's fees. So, I told my attorney to take out the request for child support and attorney's fees and send her the waiver and proposed Agreed Divorce Decree. When I told my wife that I had my attorney draw up the papers, she said she would sign on a new condition that I would pay $30,000 for the sale of our daughter to me. She was in the Houston area until two months ago, sometime in June.

My attorney sent the documents to my wife in Mexico last month in July via Federal Express, but Federal Express was informed that my wife was dead. I do not know the whereabouts of my wife for the last two months. I request that the Court allow me to serve her via publication. I have conducted due diligence to get her served and have been

unsuccessful. I request that an ad litem be appointed herein as required.

Since February 13, 2004, other than the two one-minute phone calls to [B.A.] in April of 2004, my wife has NOT called, sent letters, cards or gifts for [B.A.]. She has not come to the home to see her or called on the telephone requesting to talk to her. August 5 was our daughter's birthday, but her mom didn't even call or send a card or gift.

Last week, I was informed that my wife will be filing for abduction charges under the Hague Treaty, presumably since I have not paid the $30,000 ransom. I fear that she will abduct my daughter and hide her out until I pay her ransom. For all these reasons, I request special relief that my wife be excluded from having any possession and access to our child.

The trial court found that service of citation by publication on Betsabe was authorized and granted Alfonso's motion. Citation of "Betsabe Ivonne Ayala" was published in the *Daily Court Review* of Harris County on December 2, 2004.

On December 13, 2004, the trial court appointed Laura Arteaga as attorney ad litem to represent Betsabe and appointed Heather Horwitz as amicus attorney to represent B.A. On December 22, 2004, Horwitz filed an answer. On February 28, 2005, Arteaga filed an answer on behalf of Betsabe, entering a general denial. Arteaga did not challenge the validity of the citation or contest personal jurisdiction over Betsabe. Arteaga propounded interrogatories to Alfonso, and Alfonso provided Arteaga with copies of Betsabe's passport, travel visa, and B.A.'s birth certificate. The record reflects that these documents list Betsabe's name as "Betsabe Ivonne Niessen Velasco," "Betsabe I. Niessen," or "Betsabe Niessen Velasco." Arteaga sent several pieces of correspon-

dence to Betsabe at different addresses, which were returned. Arteaga filed a statement of facts, discussing in detail her unsuccessful efforts to locate Betsabe.

On July 18, 2005 and August 15, 2005, the trial court held a "Default Hearing." Arteaga appeared on behalf of Betsabe, Horwitz appeared on behalf of B.A., and the testimony of Alfonso was taken. Alfonso testified that Betsabe had been physically abusive toward B.A. and toward him. Alfonso said that he had spoken with Betsabe by telephone during the course of the proceedings and had discussed the divorce with her. Alfonso said that Betsabe agreed to the divorce and to "give him" B.A. in exchange for $30,000. According to Alfonso, Betsabe refused to pay child support and told him that she would not sign anything until he paid her.

At the hearing, the trial court asked Arteaga if she thought that "all reasonable efforts [had] been made to notify [Betsabe] by more traditional means than publication." Arteaga responded, "[A]ll reasonable efforts have been made, Judge, of taking into account what was provided." The trial court asked, "Are you hinting that there is information out there that ha[s]n't been provided that would be more helpful?" Arteaga responded, "I believe there may be, Judge.... I believe [Alfonso] may have information on family members." Arteaga said that she "made at least one phone call" to the Mexican Consulate, but that it had not returned her call. Then, the following colloquy took place:

> [Alfonso's counsel]: We have done everything to locate this woman. She has notice about the lawsuit. She has notice.
>
> THE COURT: Does she know that her rights are asked to be terminated, or she just know that she has been sued for divorce?

[Alfonso's counsel]: Yes. I believe she knows she is going to be terminated.

THE COURT: And what is your basis for that?

[Alfonso's counsel]: Whatever he told her.

[Arteaga]: She hadn't received any of my letters, but she may have received the regular mail, but she did receive my Certified Mail.

. . . .

THE COURT: Did you tell her at any time that you intended to terminate her rights to the child?

[Alfonso's counsel]: Yes.

THE COURT: How did you tell her?

[Alfonso's counsel]: I told her the divorce was filed.

THE COURT: Divorce is one thing, terminating is another.

On September 7, 2005, the trial court signed a Final Decree of Divorce and Termination. The decree contains a recital that the court found that Betsabe, "although duly cited by publication," had "failed to appear" and had "wholly made default." The trial court awarded the apartment in Mexico and its contents to Betsabe; awarded Alfonso's business to Alfonso; and terminated Betsabe's parental rights.

Two years later, on September 6, 2007, Betsabe moved for a new trial. She directed the trial court to Texas Rule of Civil Procedure 329, which provides that, in cases in which judgment has been rendered on service of process by publication, when the defendant has not appeared in person or by attorney of her choosing, the court may grant a new trial upon a petition of the defendant showing good cause, supported by affidavit, filed within two years after the judgment was signed.[3] In her

motion, Betsabe alleged that she had been improperly cited by publication under the name "Betsabe Ivonne Ayala," a name that she had never used. In addition, Betsabe asserted that Alfonso had "procured the service of citation and the default judgment by fraud." Betsabe alleged that Alfonso had at all times known where she was located, that he had correctly listed her address in his first and second amended petitions as the apartment in Mexico that they owned and wherein they had resided together, and that he had failed to effectuate personal service at that address.

In her motion, Betsabe stated that "due to logistical problems" caused by her living in Mexico, she was unable to file a notarized verification and affidavit on the day she filed her motion for new trial, but that she would timely supplement her filing. On September 10, 2007, Betsabe filed an "Amended Motion for New Trial," to which she attached an affidavit in support of her motion.

Alfonso did not file a written response. The trial court moved forward with a hearing on the motion for new trial.

At the hearing, Betsabe argued, through her counsel, that, inter alia, pursuant to the Hague Service Convention, Alfonso was required to effectuate personal service on her in Mexico and could not merely cite her by publication in Harris County. Alfonso argued that Betsabe's motion for new trial was untimely because the two-year period allowed under Rule 329 had expired on Friday, September 7, 2007, but that Betsabe had not submitted the required affidavit until Monday, September 10, 2007.

The trial court orally denied Betsabe's motion for new trial, but did not enter a written order. Subsequently, Betsabe filed a motion to reconsider, in which she

---

3. *See* TEX.R. CIV. P. 329.

re-urged her contentions based on Alfonso's failure to comply with the terms of the Hague Service Convention. Her motion was overruled by operation of law.

## Motion for New Trial

In her first and second issues, Betsabe contends that the trial court erred by denying her motion for new trial, in which she challenged the underlying decree of divorce and termination of her parental rights as void for lack of personal jurisdiction.

### A. Standard of Review

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Cliff v. Huggins,* 724 S.W.2d 778, 778–79 (Tex.1987). To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles, or acted in an arbitrary or unreasonable manner. *Cire v. Cummings,* 134 S.W.3d 835, 838–39 (Tex.2004). An abuse of discretion does not occur with regard to factual matters as long as some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex.2002). Nor does it occur when the trial court's decision is based on conflicting evidence. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978).

### B. Applicable Legal Principles

██ The trial court stated in the decree that it found that Betsabe, "although duly cited by publication," had "failed to appear" and had "wholly made default." Ordinarily, to obtain a new trial following a "default judgment," a defaulting party must meet the test articulated in *Craddock v. Sunshine Bus Lines, Inc.,* 134 Tex. 388, 133 S.W.2d 124 (1939). *Lowe v. Lowe,* 971 S.W.2d 720, 723 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). Here, however, because the record reflects that Betsabe was represented at trial by an attorney ad litem appointed by the court and the case was tried on the merits, the trial court's decree is not a true default judgment. *See LeBlanc v. LeBlanc,* 778 S.W.2d 865, 865 (Tex.1989) (explaining that there is no default when party is represented at trial by counsel, even though party failed to appear personally for trial); *In re K.C.,* 88 S.W.3d 277, 279 (Tex.App.-San Antonio 2002, pet. denied) (stating that *Craddock* does not apply when party's attorney appears and case is tried on merits); *see also Jackson v. Jackson,* No. 01–04–01215–CV, 2006 WL 3095384, at *4 (Tex.App.-Houston [1st Dist.] Nov. 2, 2006, no pet.) (not designated for publication).

Betsabe brought her motion for new trial pursuant to Rule of Civil Procedure 329. *See* TEX.R. CIV. P. 329. Rule 329 prescribes the applicable test, as follows, in pertinent part:

> In cases in which judgment has been rendered on service of process by publication, when the defendant has not appeared in person *or by attorney of his own selection:*
>
> (a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was signed. The parties adversely interested in such judgment shall be cited as in other cases.

TEX.R. CIV. P. 329(a) (emphasis added).

██ Here, the trial court's judgment was rendered after service of process on Betsabe by publication, and Betsabe did not appear in person or by an attorney *of her own selection. See id.* Hence, the trial court "may" grant a new trial if Betsabe showed "good cause." *See Morris v. Morris,* 759 S.W.2d 707, 711 (Tex.App.-San Antonio 1988, writ denied) (J. Butts, dis-

senting) (explaining that judgment following citation by publication is not true default and that Rule 329 is proper vehicle for challenge). Good cause means (1) lack of actual knowledge of the suit prior to rendition of judgment and (2) a meritorious defense. *Sexton v. Sexton,* 737 S.W.2d 131, 132 (Tex.App.-San Antonio 1987, no writ). Although granting or refusing to grant a motion for new trial is within the court's discretion, it is an abuse of discretion to refuse to set aside a prior judgment if good cause is shown. *Stock v. Stock,* 702 S.W.2d 713, 715 (Tex.App.-San Antonio 1985, no writ). Trial courts are directed to exercise their discretion with liberality to permit a defendant her day in court after citation by publication. *Leak v. Leak,* 564 S.W.2d 839, 841 (Tex.Civ.App.-Austin 1978, no writ). This is especially true in suits affecting the parent-child relationship. *Sexton,* 737 S.W.2d at 133.

We first consider whether there was valid service of process. We need not determine "good cause" if the record does not show due service of citation. *See Wiebusch v. Wiebusch,* 636 S.W.2d 540, 542 (Tex.App.-San Antonio 1982, no writ) (construing Rule 329).

## C. Due Service of Citation

In her second issue, Betsabe contends that, in his affidavit to procure service by publication, Alfonso "falsely stated" that Betsabe's address was unknown and that he had used due diligence in attempting to serve her. Betsabe contends that Alfonso "did not satisfy constitutional due diligence requirements because ... he never once attempted to personally serve" her

through the Hague Service Convention, which is the "exclusive method of service on a Mexican resident." In her first issue, Betsabe contends that she was cited by publication using an incorrect name.[4]

### 1. *Due diligence*

Alfonso stated in his first amended petition, "Betsabe Ivonne Ayala, Respondent, resides in: Eje Central Lazaro Cardenas No. 616–C 103, Col. Alamos C.P. 03100 Mexico D.F., Mexico." Alfonso attempted to serve Betsabe by certified mail sent directly to her at that address.

Service of process on a defendant in Mexico is governed by the Hague Service Convention, which is an international treaty. *See* Nov. 15, 1965, 20 U.S.T. 361; *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988) ("The Hague Service Convention is a multilateral treaty."); *see Nuovo Pignone, SpA v. Storman Asia M/V,* 310 F.3d 374, 383 (5th Cir.2002) (characterizing Hague Service Convention as multinational treaty). The United States ratified the treaty in 1969; Mexico acceded to the treaty on November 2, 1999, and it "entered into force" in Mexico on June 1, 2000.[5] The Hague Service Convention applies "in all cases, in civil or commercial matters, where there is an occasion to transmit a judicial or extrajudicial document for service abroad." 20 U.S.T. 361, art. 1; *Schlunk,* 486 U.S. at 699, 108 S.Ct. at 2108 (stating that "this language is mandatory"). The purpose of the treaty is "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit,

---

4. We address Betsabe's issues out of order to facilitate the analysis.

5. *See* Hague Conference on Private International Law, Status Table, 14: Convention of 15 November 1965 on the Service Abroad of

Judicial and Extrajudicial Documents in Civil or Commercial Matters (Sept. 22, 2009), http://hcc h.e-vision.nl/index_en.php?act=conventions.status & cid=17 (last visited Nov. 17, 2009).

and to facilitate proof of service abroad." *Schlunk,* 486 U.S. at 698, 108 S.Ct. at 2107.

Article VI of the Constitution of the United States provides as follows, in pertinent part:

> This Constitution, and the laws of the United States which shall be made in Pursuance thereof; *and all treaties made, or which shall be made, under the Authority of the United States, shall be the supreme law of the Land; and the judges of every state shall be bound thereby,* any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, cl. 2 (emphasis added). The United States Supreme Court has held that the Hague Service Convention "pre-empts inconsistent methods of service prescribed by state law in all cases to which it applies." *Schlunk,* 486 U.S. at 699, 108 S.Ct. at 2108 (stating that this is "by virtue of the Supremacy Clause, U.S. Const., art. VI"). In addition, Texas courts have held that "[t]he Hague Convention preempts any inconsistent methods of service prescribed by Texas law in all cases where the Convention applies." *Paradigm Entm't, Inc. v. Video Sys. Co.,* No. Civ.A. 3:99–CV–2004P, 2000 WL 251731, at *4 (N.D.Tex. Mar. 3, 2000).

The methods of service provided by Texas law are found in the Texas Rules of Civil Procedure. Rule 108a, which governs service of process in foreign countries, provides as follows, in pertinent part:

> Service of process may be effected upon a party in a foreign country if service of the citation and petition is made: ... (c) in the manner provided by Rule 106; or (d) pursuant to the terms of any applicable treaty or convention; ... or (f) by any other means directed by the court that is not prohibited by the law of the country where service is to be made. The method for service of process in a

foreign country must be reasonably calculated, under all the circumstances, to give actual notice of the proceeding to the defendant in time to answer and defend. A defendant served with process under this rule shall be required to appear and answer in the same manner and time and under the same penalties as if he had been personally served with citation within this state to the full extent that he may be required to appear and answer under the Constitution of the United States or under any applicable convention or treaty in an action either in rem or in personam.

Tex.R. Civ. P. 108a. Hence, as applicable to this case, service may be effectuated upon a party in a foreign country if service is made (1) in the manner provided by Rule 106; (2) pursuant to the terms of any applicable treaty or convention; or (3) by any other means directed by the court that is not prohibited by the law of the country where service is to be made.

Texas Rule of Civil Procedure 106 provides, in pertinent part:

> (a) Unless the citation or an order of the court otherwise directs, the citation shall be served by any person authorized by Rule 103 by
>
> (1) delivering to the defendant, in person, a true copy of the citation with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
>
> (2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached.

Tex.R. Civ. P. 106. Rule 103 authorizes service to be made by "(1) any sheriff or constable or other person authorized by law, (2) any person authorized by law or by written order of the court who is not

less than eighteen years of age, or (3) any person certified under order of the Supreme Court." Tex.R. Civ. P. 103. Hence, citation and a copy of the petition are to be served by an authorized person and are to be delivered to the defendant, in person, or sent by registered or certified mail.

The Hague Service Convention, however, "does not permit service of process by direct mail" to a defendant.[6] *Nuovo Pignone*, 310 F.3d at 384; 20 U.S.T. 361, art. 5. Requests for service on a defendant within the borders of Mexico must be sent directly to Mexico's designated Central Authority. *See Schlunk*, 486 U.S. at 698–99, 108 S.Ct. at 2107–08 (explaining that Convention requires each state to establish a central authority to receive requests for service from other countries). The Central Authority then forwards the request to the competent judicial authority to effectuate service. 20 U.S.T. 361, art. 5 ("The Central Authority of the State addressed shall itself serve the document or arrange to have it served by an appropriate agency."). Mexico has

designated, as its Central Authority, the General Direction of Legal Affairs of the Ministry of Foreign Affairs, and Mexico requires that documents to be served in within its borders be in Spanish or accompanied by a corresponding translation.[7]

In this case, the record reflects that Alfonso attempted to serve Betsabe with his first amended petition by certified mail sent directly to her at her address in Mexico and that the citation was returned, marked undeliverable. It is undisputed that Alfonso never attempted to serve Betsabe through Mexico's Central Authority. In addition, the record reflects that the citation and petition were in English and had no accompanying Spanish translation. Hence, Alfonso failed to effectuate valid service of citation on Betsabe, either in person or by mail.

Texas Rule of Civil Procedure 108a also allows service by "any other means directed by the court that is not prohibited by the law of the country where service is to be made." Tex.R. Civ. P. 108a(f). Here,

---

**6.** We recognize that Article 10 of the Hague Service Convention states, "Providing the State of destination does not object, the present Convention shall not interfere with (a) the freedom to send judicial documents by postal channels, directly to persons abroad." 20 U.S.T. 361, art. 10. The Fifth Circuit has construed Article 10 to allow "judicial documents" to be "sent" through postal channels directly to persons abroad once service of process has been effectuated, and has concluded that the Hague Service Convention does not permit parties to effectuate *service of process* on foreign defendants by mail. *See Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 383–85 (5th Cir.2002). In *Nuovo Pignone*, the court reasoned that the purpose of the Hague Service Convention is not only to simplify the service of process, but to ensure that plaintiffs deliver notice to foreign addressees in sufficient time to defend the allegation. *Id.* at 384. The court stated that an interpretation of Article 10 that a State of destination could simply "object" to service by mail was unconvincing.

*Id.* Service of process through a central authority under articles 2 through 7 of the Hague Service Convention and service through diplomatic channels under articles 8 and 9 require that service be effected through official government channels. *Id.* at 384–85. The court reasoned that "[i]t is unlikely that the drafters would have put in place these methods of service requiring the direct participation of government officials, while simultaneously permitting the uncertainties of service by mail." *Id.* at 385. The court noted a circuit split on the matter and chose to adopt the reasoning of the courts that have decided that the Hague Service Convention does not permit service of process on a foreign defendant by direct mail. *Id.* at 383–84.

**7.** *See* Hague Conference on Private International Law, Declarations (2009), http://hcch.e-vision.nl/index_en.php?act=status.comment & csid=412 & disp= resdn (last visited Nov. 17, 2009).

the trial court directed that Alfonso could serve Betsabe with his second amended petition by citing her by publication, as provided by Rule 109. Rule 109, "Citation by Publication," provides,

> When a party to a suit ... shall make oath that the residence of any party defendant is unknown to the affiant ... and that after due diligence ... the affiant ha[s] been unable to locate the whereabouts of such defendant, ... the clerk shall issue citation for such defendant for service by publication. In such cases, it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant ... before granting any judgment on such service.

TEX.R. CIV. P. 109.

Although nothing in the Hague Convention expressly disavows service by publication, because service under the Convention is required to be in Spanish and transmitted through Mexico's Central Authority, it does not appear that service by publication in English in a Texas newspaper, when the defendant is known to be in Mexico (as is evidenced by Alfonso's assertions in his petition), comports with the terms of the Hague Service Convention.

This conclusion is supported by Article 15, paragraph 1, of the Hague Service Convention, which provides as follows:

> [w]here a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, ... and the defendant has not appeared, judgment shall not be given until it is established that
>
> (a) the document was served by a method prescribed by the internal law of the State [here, Mexico] addressed for the service of documents in do-

mestic actions upon persons who are within its territory, or

> (b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention, and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

20 U.S.T. 361, art. 15. Mexico "does not recognize the faculty of the judicial authority to give judgment when the defendant has not appeared and there is no communication establishing that the document was served, or that documents originating outside the country were indeed delivered, according to subparagraphs" (a) and (b) above.[8]

Even if we assume, without deciding, that the Hague Service Convention allows service by publication, here, Alfonso attested in his affidavit to acquire service by publication, pursuant to Rule 109, that Betsabe's residence was unknown. However, the record shows that Alfonso stated in his second amended petition, filed the same day as his application for service by publication, the address of Betsabe's residence in Mexico.

In *Marriage of Peace*, the court considered, on facts similar to the instant case, whether service by publication was proper when the residence of the defendant was known and concluded that it was not. *In the Matter of the Marriage of Peace*, 631 S.W.2d 790, 793 (Tex.App.-Amarillo 1982, no writ). There, as here, the appellant, Guadalupe, and appellee, Charles, were married in Mexico and owned property in Mexico and in Texas. *Id.* Guadalupe was a Mexican citizen. *Id.* Twenty-one years later, Charles filed for divorce in Texas. *Id.* Charles traveled to Mexico to ask Guadalupe to sign the divorce papers, but

---

8. *See id.*

she refused. *Id.* Subsequently, Charles filed an affidavit, under Rule of Civil Procedure 109, seeking to serve Guadalupe by publication. *Id.* Similar to the instant case, publication appeared in English, in a weekly newspaper, the Friona Star, located in Parmer County, Texas. *Id.* Also similar, Guadalupe did not appear at trial, and the trial court appointed an ad litem to represent her interests. *Id.* at 792. After trying the case on the merits, the trial court rendered judgment granting Charles a divorce, dividing that portion of the parties' estate that was located in Texas. *Id.* There, as in the case at hand, Guadalupe filed a motion for new trial under Rule 329, which was overruled, and Guadalupe appealed. *Id.* at 791.

On appeal, the court concluded that the trial court did not have jurisdiction over Guadalupe "as a result of the service by publication." *Id.* The court recognized that,

> notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency."

*Id.* at 794 (quoting *Schroeder v. New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 282–83, 9 L.Ed.2d 255 (1962)) (applying and quoting *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950)).

There, as in the instant case, the evidence showed that Charles had communicated by telephone with Guadalupe, who was in Mexico, and that Charles had admitted that he knew where to send mail to Guadalupe in Mexico. *Id.* at 793. There, as Arteaga testified in the instant case, the testimony showed that Guadalupe had received at least one letter. *Id.* The court reasoned that, under all the circumstances of the case, service by publication in the Friona Star located in Parmer County, Texas, was not reasonably calculated to apprise Guadalupe of the pendency of the action and afford her an opportunity to present her objections. *Id.* at 794. Guadalupe's actual knowledge of the suit did not "aid or support the trial court's jurisdiction" to render the divorce. *Id.* The court reversed and remanded for a new trial. *Id.*

Although *Marriage of Peace* pre-dates Mexico's accession to the Hague Service Convention, we find its rationale applicable to this case because it comports with the guiding authority to which we are bound in this case—the objectives of the Hague Service Convention,[9] the established doctrines of the United States Supreme Court,[10] and

**9.** The purposes of the Hague Service Convention are "to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698, 108 S.Ct. 2104, 2107, 100 L.Ed.2d 722 (1988).

**10.** Namely, that "[n]otice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. 'Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.'" *See Schroeder v. New York*, 371 U.S. 208, 212–13, 83 S.Ct. 279, 282–83, 9 L.Ed.2d 255 (1962) (applying and quoting *Mullane v. Central Hanover B. & T. Co.*, 339 U.S. 306, 318, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950)).

the Texas Rules of Civil Procedure concerning service on foreign defendants.[11]

Here, as in *Marriage of Peace*, we conclude that, under all the circumstances of this case—which include that Alfonso knew Betsabe's address in Mexico, had spoken to her by phone during the proceedings, and that Betsabe does not speak English—notice to Betsabe by publication in English in a Texas periodical did not constitute valid service of Alfonso's suit for divorce and termination of Betsabe's parental rights.

Moreover, even if we assume, without deciding, that citation by publication was a valid method of service in this case, the record does not show strict compliance with the rules regarding service of citation. The record reflects that Betsabe is named in her passport, her visa, and on B.A.'s birth certificate as "Betsabe Ivonne Niessen Velasco." In addition, Betsabe's immigration documents list her name as "Betsabe I. Niessen." Betsabe attested in her affidavit in support of her motion for new trial that her name is "Betsabe Ivonne Niessen Velasco," that her "name has never been "Betsabe Ivonne Ayala," and that she "has never gone by that name." Alfonso did not controvert Betsabe's contentions. Nothing in the record supports that Betsabe has used the name "Betsabe Ivonne Ayala," the name in which citation by publication was issued.

 In a direct attack on a judgment, as here, we do not presume the validity of issuance, service, or return of citation. *See Amato v. Hernandez*, 981 S.W.2d 947, 949 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). If the record does not show strict compliance with the rules regarding service of citation, then service was invalid and the judgment is

void. *Id.* "Strict compliance" means literal compliance with the rules governing issuance, service, and citation. *Id.* An incorrect name is sufficient to show a citation is not in strict compliance with the rules. *See id.; Medeles v. Nunez*, 923 S.W.2d 659, 663 (Tex.App.-Houston [1st Dist.] 1996, writ denied), *rev'd on other grounds by Barker CATV Const. Inc. v. Ampro Inc.*, 989 S.W.2d 789 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (concluding that citation was invalid because it named "Maria Mendeles," rather than "Maria Medeles" as defendant).

 At trial, Alfonso testified that Betsabe had actual notice of the suit because he had talked with her by telephone. Actual notice to a defendant of a pending suit, without proper notice, is not sufficient. *See Amato*, 981 S.W.2d at 950 (citing *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990)).

 In sum, the record does not reflect that Alfonso effectuated valid service of process on Betsabe, the trial court did not acquire personal jurisdiction over her. "[J]urisdiction is dependent upon citation issued and served in a manner provided for by law." *Wilson*, 800 S.W.2d at 836; *see* Tex.R. Civ. P. 124 (stating that trial court does not have jurisdiction to enter judgment or order against respondent unless record shows proper service of citation on respondent, an appearance by respondent, or written memorandum of waiver at time judgment or order was entered).

 "It is axiomatic that a judgment must be supported by a proper showing of jurisdiction over the subject matter and over the relevant parties." *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Assoc.*, 455 U.S. 691, 705 n. 10, 102 S.Ct.

---

11. "The method for service of process in a foreign country must be reasonably calculated, under all the circumstances, to give actual notice of the proceeding to the defendant in time to answer and defend." Tex.R. Civ. P. 108a.

1357, 1366 n. 10, 71 L.Ed.2d 558 (1982); *see Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985); *In re Bokeloh*, 21 S.W.3d 784, 794 (Tex.App.-Houston [14th Dist.] 2000, orig. proceeding). Personal jurisdiction is comprised of two elements: (1) the defendant must be amenable to the jurisdiction of the court and (2) the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex.1985); *Furst v. Smith*, 176 S.W.3d 864, 868 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Although a divorce proceeding is characterized as quasi in rem and the Texas Family Code allows a trial court to issue a decree of divorce and a decree as to child custody without personal jurisdiction over all the parties, such designation does not dispense with the requirement that jurisdiction be invoked by adequate notice to a non-resident spouse. *See* Tex. Fam.Code Ann. § 152.201(c) (Vernon 2008); *Heth v. Heth*, 661 S.W.2d 303, 304 (Tex.App.-Fort Worth 1983, no writ); *see also Deanne v. Deanne*, 689 S.W.2d 262, 263 (Tex.App.-Waco 1985, no writ) ("When a defendant has not been served in the manner required by law, the court's jurisdictional power to act in the case, both in rem and in personam jurisdiction, is not invoked, notwithstanding actual notice of the suit on the part of the defendant. This includes both in rem and in personam aspects of a divorce action."); *Perry v. Ponder*, 604 S.W.2d 306, 322 (Tex. Civ.App.-Dallas 1980, no writ) (analyzing in detail the components of personal jurisdiction in family law matters). Texas procedural law and constitutional due process require that Betsabe be served, waive service, or voluntarily appear before judgment may be rendered. *See* Tex.R. Civ. P. 124; Tex. Fam.Code Ann. § 6.408 (Vernon 2008) (stating that "[c]itation on the filing of an original petition in a suit for dissolution of a marriage shall be issued and served as in other civil cases."); Tex. Fam.

Code Ann. § 152.205 (Vernon 2008) (stating, generally, that before child custody determination may be made, notice and opportunity to be heard must be given to any parent whose parental rights have not been previously terminated); *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84–86, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988); *Kao Holdings, L.P. v. Young*, 261 S.W.3d 60, 61–62 (Tex.2008); *Werner v. Colwell*, 909 S.W.2d 866, 869–70 (Tex.1995).

Further, the Supreme Court of Texas has held that a termination suit, as this case involves, is not a custody proceeding. *Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984). A termination suit is afforded higher scrutiny. *In re G.M.*, 596 S.W.2d 846, 846 (Tex.1980). An involuntary termination of parental rights involves fundamental constitutional rights. *See Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551 (1972); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). A termination decree is complete, final, irrevocable and divests for all time that natural right as well as all legal rights. *See Holick*, 685 S.W.2d at 20. Termination proceedings must be strictly scrutinized, and termination statutes are strictly construed in favor of the parent. *Id.* Thus, we must exercise the utmost care in reviewing the termination of parental rights to be certain that a parent's rights are acknowledged and protected. *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex.App.-Austin 2000, pet. denied).

When, as here, a trial court enters a judgment before it acquires jurisdiction of the parties, the judgment is void. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985); *In re Mask*, 198 S.W.3d 231, 234 (Tex.App.-San Antonio 2006, orig. proceeding) ("A judgment or order is void when it is apparent that the court rendering it lacked jurisdiction of either the parties or the subject matter of the lawsuit."). A void order has no force or effect and

confers no rights; it is a mere nullity. *In re Garza*, 126 S.W.3d 268, 271 (Tex.App.-San Antonio 2003, orig. proceeding). A void order is not subject to ratification, confirmation, or waiver. *Id.*[12]

We recognize that, ordinarily, under the Texas Rules of Civil Procedure, because the attorney ad litem appointed for Betsabe filed an answer, asserting a general denial, Betsabe would have waived her right to challenge any defects of service. *See* TEX.R. CIV. P. 121 (stating that "an answer shall constitute an appearance of the defendant so as to dispense with the necessity of the issuance of service of citation upon him"); *In re A.B.*, 207 S.W.3d 434, 439–40 (Tex.App.-Dallas 2006, no pet.) (holding that general denial filed by attorney ad litem, who was appointed to represent resident defendant who did not appear in divorce suit after citation by publication, waived any defect of service and that trial court had personal jurisdiction over defendant); *Phillips v. Dallas Co. Child Prot. Servs. Unit*, 197 S.W.3d 862, 865 (Tex.App.-Dallas 2006, pet. denied) (holding, in context of default order terminating parental rights, that filing of general denial by attorney ad litem waived any complaint about defective service); *see also In re $475,001.16*, 96 S.W.3d 625, 628–29 (Tex.App.-Houston [1st Dist.] 2002, no pet.) (holding appellant waived right to challenge defects in service after attorney ad litem appointed to act on appellant's behalf answered suit).

In each of these cases, however, there was either evidence that the defendant was a resident of the State of Texas or evidence that the whereabouts of the defendant were entirely unknown. In either situation, the Texas Rules of Civil Procedure govern. The Hague Service Convention does not apply when the defendant is a resident of Texas or the residence of the defendant is unknown. *See* 20 U.S.T. 361, art. 1. Here, however, Betsabe is not a resident of Texas and the address of her residence is known. Because she is a resident of Mexico, the Hague Service Convention governs. Moreover, because we have concluded that the trial court did not acquire personal jurisdiction over Betsabe at the commencement of suit, the subsequent actions of the trial court in authorizing the ad litem to represent her interests at trial, and everything that flowed therefrom, are likewise a nullity.

We also recognize that Family Code section 161.211 restricts a parent's ability to bring a direct or collateral attack on a termination proceeding more than six months after the date the order is signed. TEX. FAM.CODE ANN. § 161.211 (Vernon 2008). Further, the record shows that, here, the two-year period provided for Betsabe to bring her motion for new trial in Rule 329 expired on Friday, September 7, 2007, but Betsabe did not file her Rule 329 affidavit until Monday, September 10, 2007.[13] However, to hold that Betsabe is now precluded from challenging a void decree of divorce and termination of her parental rights pursuant to such state procedural rule or statute is to ignore that Alfonso failed at the outset to invoke the

**12.** This court has recognized that a void judgment need not be appealed to be declared void. *Southern Ins. Co. v. Brewster*, 249 S.W.3d 6, 13 (Tex.App.-Houston [1st Dist.] 2007, pet. denied). This court has explained, however, that some void judgments, such as those allegedly void for lack of service, must, nevertheless, be challenged. *Metropolitan Transit Auth. v. Jackson*, 212 S.W.3d 797, 801–02 (Tex.App.-Houston [1st Dist.] 2006, pet. denied) (citing *Deen v. Kirk*, 508 S.W.2d 70, 72 (Tex.1974) (holding that judgment which was allegedly void for lack of service must be challenged), and *McEwen v. Harrison*, 162 Tex. 125, 345 S.W.2d 706, 709 (1961)).

**13.** Albeit in a different context, the court of criminal appeals has held that, although Tex-

trial court's jurisdiction over Betsabe because he failed to serve her under the terms of the Hague Service Convention, the provisions of which are mandatory, pre-emptive, and constitute "the supreme law of the Land" to which "the judges of every state shall be bound ... *any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.*" U.S. CONST. art. VI, cl. 2 (emphasis added); *see Schlunk,* 486 U.S. at 699, 108 S.Ct. at 2108.

We conclude that, because Betsabe is a citizen of a Mexico and the record shows that her address in Mexico was known to Alfonso at the time he sought to effect service on her (which was the same day he filed his petition containing her address in Mexico), and because Betsabe was not duly served with citation under the law, the trial court did not acquire personal jurisdiction over her and the trial court's judgment is void. We hold that the trial court abused its discretion by failing or refusing to grant Betsabe's motion for new trial.

Accordingly, we sustain Betsabe's first and second issues.

### Conclusion

We reverse the trial court's judgment and remand for a trial on the merits.[14]

as Rule of Appellate Procedure 21.4(b) (pertaining to amending motion for new trial) prohibits "a defendant from filing an amended motion for new trial after the thirty-day period prescribed, even with leave of court, such prohibition does not deprive the trial court of jurisdiction; nor does it deprive the trial court of the authority to rule on a tardy amendment to a timely motion for new trial, at least absent an objection from the State, at any time within the seventy-five days for ruling on a motion for new trial." *State v. Moore,* 225 S.W.3d 556, 558 (Tex.Crim.App. 2007).

14. Upon remand, the parties will be before the court without need for further citation. Betsabe has now become subject to the jurisdiction of the court. *See* TEX.R. CIV. P. 123 (providing that when judgment is reversed on appeal for want of proper service, no new citation shall be issued, as defendant is presumed to have entered her appearance); *Ross v. Nat. Ctr. for the Employment of the Disabled,* 197 S.W.3d 795, 798 (Tex.2006); *Boyo v. Boyo,* 196 S.W.3d 409, 417–18 (Tex.App.-Beaumont 2006, no pet.).