**Affirmed and Majority and Dissenting Opinions filed May 10, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-11-00489-CV

_____

## IN THE INTEREST OF A.A.S., A CHILD

_____

**On Appeal from the 315th District Court
Harris County, Texas
Trial Court Cause No. 2010-57789**

_____

## OPINION

About a year after a Harris County court terminated his parental rights, Florida resident Roger Salazar filed a petition for an equitable bill of review in an effort to have the termination decree set aside. The trial court dismissed the petition pursuant to Texas Family Code section 161.211, which provides that an order terminating the parental rights of a person who was served with citation by publication generally is not subject to collateral or direct attack more than six months after the order was signed. TEX. FAM. CODE ANN. § 161.211(b) (West 2008). Salazar claims that the statute is inapplicable in that he was served with citation by publication only because his child's mother fraudulently provided false information to authorities about his whereabouts. Because we

conclude that the statute nevertheless applies in the circumstances presented here, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Roger Salazar had a child with Jessica Mayo in 2005, when he and Mayo lived together in Naples, Florida. For two-and-a-half years after the child was born, Mayo lived intermittently with Salazar, but after that time, she left with the child and no longer kept Salazar informed of their address.

In December 2007, the Texas Department of Family & Protective Services filed a petition in Harris County to terminate Mayo's parental rights. Department representative Marvia King filed an "affidavit regarding due diligence" in the case, stating that in her attempts to locate the unknown father of the child, she had "[c]hecked with the mother, all known friends, neighbors, and relatives for the name of an alleged father." At some point, the Department learned Salazar's identity, and in June 2009, a citation identifying Salazar by name was published in the *Daily Court Review* in Harris County. A month later, Mayo executed an affidavit voluntarily relinquishing her parental rights. In the affidavit, she identified Salazar by name, stated his date of birth, and represented that he resided in Harris County. At the trial of the case, another Department employee, Ke'sha Jacobs, testified that Salazar's whereabouts were unknown. The trial court signed the order terminating Salazar's parental rights on September 15, 2009.

Salazar learned of the termination decree in August 2010 and filed a petition for an equitable bill of review the following month. In its answer and in a motion to dismiss, the Department asserted that the trial court was statutorily barred from granting the petition because it was filed more than six months after the termination decree. The trial court agreed and dismissed the petition. Salazar made an offer of proof of the evidence that he would have presented concerning the substantive merits of his petition. He testified that he had never been to Texas before; that he had lived in Naples, Florida since before his son was born; and that he had maintained the same telephone number so that Mayo always could reach him. He offered evidence that he is identified on his son's

2

birth certificate as the child's father; that he claimed his son as a dependent in 2006 and 2007; that he always has held the child out as his son; that he actively tried to locate the child; and that when he learned of the termination, he tried unsuccessfully to have the child placed with his relatives.

Although the trial court allowed Salazar's motion for new trial to be overruled by operation of law, the court nevertheless issued findings of fact and conclusions of law at Salazar's request. Salazar filed this appeal within ninety days after the trial court signed the order dismissing his petition.

## II. ANALYSIS

A bill of review is an equitable proceeding to set aside a prior judgment that no longer can be challenged by a motion for a new trial or by direct appeal. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) (citing *Transworld Fin. Serv. Corp. v. Briscoe*, 722 S.W.2d 407, 407 (Tex. 1987)). The petitioner ordinarily must plead and prove that he has a meritorious defense to the claim, but was prevented from presenting his defense by the fraud, accident or wrongful act of his opponent, unmixed with any fault or negligence of his own. *Transworld*, 722 S.W.2d at 408. If the petitioner was not served, however, then his own lack of fault is established, and he need not establish that he has a meritorious defense or that his opponent committed any wrong. *Caldwell*, 975 S.W.2d at 537. In an appeal of the denial of a petition for bill of review, we will reverse only if the trial court's ruling constituted an abuse of discretion. *Truong Nguyen v. Intertex, Inc.*, 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

## A. Timeliness of Appeal

As a threshold matter, we address the Department's contention that this appeal is untimely, and that we accordingly must dismiss it for lack of jurisdiction. The Department bases this argument on former section 109.002(a) of the Texas Family Code, which provided as follows:

3

> An appeal from a final order rendered in a suit, when allowed under this section or under other provisions of law, shall be as in civil cases generally. *An appeal in a suit in which termination of the parent-child relationship is in issue* shall be given precedence over other civil cases and *shall be accelerated by the appellate courts.* The procedures for an accelerated appeal apply to an appeal in which the termination of the parent-child relationship is in issue.

*See* Act of May 15, 2001, 77th Leg., R.S., ch. 539 § 2, 2001 TEX. GEN. LAWS 1017, 1017 (emphasis added).[1]

An accelerated appeal differs from a typical civil appeal in two significant ways. First, most civil appeals can be filed within thirty days, but an accelerated appeal must be filed within twenty days. *See* TEX. R. APP. P. 26.1; *In re K.A.F.*, 160 S.W.3d 923, 927 (Tex. 2005). And second, the time to file a typical civil appeal—but not an accelerated appeal—is extended to ninety days if a party files certain post-trial motions or, in a proper case, asks the trial court to issue findings of fact and conclusions of law. *Compare* TEX. R. APP. P. 26.1(a) *with* TEX. R. APP. P. 26.1(b). Thus, the direct appeal of an order terminating parental rights normally must be filed within twenty days. *See In re L.N.M.*, 182 S.W.3d 470, 473 (Tex. App.—Dallas 2006, no pet.). On the other hand, one way in which the two types of appeals are alike is that in both "standard" and accelerated appeals, the appellate court may grant a motion to extend the time for filing the notice of appeal by fifteen days. TEX. R. APP. P. 26.3. Thus, by filing the proper post-trial motions, a litigant could take as long as 105 days to file a notice of appeal in a typical civil case, but filing the identical motions in a case for which the appeal is accelerated would give the appellant only 35 days in which to perfect the appeal.

The Department contends that Salazar's appeal of the denial of his petition for a bill of review is an "appeal in a suit in which termination of the parent-child relationship is in issue," and is therefore subject to former section 109.002(a). Because Salazar filed

---

[1] Effective September 1, 2011, this section was amended to add the phrase, "under the Texas Rules of Appellate Procedure" to the end of the first sentence. *See* Act of May 5, 2011, 82nd Leg., R.S., ch. 75, §§ 8, 9, 2011 TEX. GEN. LAWS. 348, 349 (codified at TEX. FAM. CODE ANN. § 109.002 (West Supp. 2011)).

his notice of appeal eighty days after the trial court signed the order dismissing his petition, the Department contends that this appeal is untimely. We disagree.

Because a petition for a bill of review is brought as a separate lawsuit, we are not presented with an appeal of an order terminating parental rights, or even an appeal from the same suit; we are presented only with an appeal of the order dismissing Salazar's petition for a bill of review. The trial court agreed with the Department that the petition was time-barred, and Salazar challenged the Department's reliance on the limitations provision of Texas Family Code section 161.211 only on the ground that he was not validly served with citation by publication. Thus, the only matter "in issue" in this proceeding is the question of whether Salazar was properly served. The trial court issued no other order in this suit, and in light of this ruling, no other evidence was relevant. *See Ross v. Nat'l Ctr. for the Emp't of the Disabled*, 197 S.W.3d 795, 797 (Tex. 2006) (per curiam) ("[A] defendant who is not served with process is entitled to a bill of review *without a further showing . . . .*") (emphasis added) (citing *Caldwell*, 154 S.W.3d at 96–97). *Cf. San Antonio Traction Co. v. Higdon*, 58 Tex. Civ. App. 83, 86, 123 S.W. 732, 734 (Tex. Civ. App.—San Antonio 1909, writ ref'd) ("'[Evidence must] be confined to the point *in issue*.' Facts in issue are those facts upon the truth or existence of which the right or liability to be ascertained *in the proceeding* depends . . . ." (quoting Greenleaf on Evidence)) (emphasis added).

The provisions of the Family Code cited by the Department reflect the same distinction between an appeal of an order denying or dismissing a bill of review and an appeal of an order in which the termination of parental rights is in issue. In the version of section 109.002(a) applicable here, the legislature first states, "An appeal from a final order rendered *in a suit*, when allowed under this section or under other provisions of law, *shall be as in civil cases generally*." (emphasis added). A bill-of-review proceeding is brought as a separate "suit" from an action to terminate parental rights, and in civil cases generally, an appeal of a petition for review is not accelerated. Because the trial

5

court dismissed Salazar's petition for bill of review, the earlier order terminating his parental rights remained final, and was not again placed in issue. [2]

We therefore conclude that Salazar's challenge of the trial court's order is not an accelerated appeal under former section 109.002(a) of the Texas Family Code. Because this instead is a standard appeal and Salazar timely moved for a new trial, he had at least ninety days from the date of judgment in which to file a notice of appeal. And, because he filed a notice of appeal within that time period, we have jurisdiction to consider the merits of his appeal.

## B.     The Bill of Review Is Barred by 161.211(b)

Section 161.211(b) of the Texas Family Code provides in relevant part, "Notwithstanding Rule 329, Texas Rules of Civil Procedure, the validity of an order terminating the parental rights of a person who is served by citation by publication is not subject to collateral or direct attack after the sixth month after the date the order was signed."[3] It is undisputed that this lawsuit is a collateral or direct attack on the order

---

[2] If the trial court had granted Salazar's petition, then the termination of his parental rights would have been at issue in this suit. *See Kiefer v. Touris*, 197 S.W.3d 300, 302 (Tex. 2006) (per curiam) (explaining that if the trial court makes an interlocutory order granting a petition for a bill of review and setting aside the former judgment, then it must go on to retry those issues on the merits). But where, as here, the trial court dismisses or denies the petition for bill of review as untimely, then the earlier judgment remains final, and the matters adjudicated in the earlier suit are not again placed in issue. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) ("The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point.").

[3] Were it not for section 161.211, Texas Rule of Civil Procedure 329(a) would have allowed Salazar two years in which to file a motion for new trial to challenge the validity of his citation by publication or four years after notice of the judgment in which to file a bill of review. *Dispensa v. Univ. State Bank*, 987 S.W. 2d 923, (Tex. App.—Houston [14th Dist.] 1999 no pet.). Rule 329 provides in relevant part as follows:

> In cases in which judgment has been rendered on service of process by publication, when the defendant has not appeared in person or by attorney of his own selection:

> (a) The court may grant a new trial upon petition of the defendant showing good cause, supported by affidavit, filed within two years after such judgment was signed. The parties adversely interested in such judgment shall be cited as in other cases.

TEX. R. CIV. P. 329. We assume that because his petition for a bill of review was filed within the applicable two-year period, it would have been treated as such a motion, with a lesser burden of proof than a bill of review.

6

terminating Salazar's parental rights. Under a plain reading of the statute, Salazar's lawsuit is barred by this statute.

## C. Salazar Did Not Prove Fraud By The Department

Salazar argued in the trial court and on appeal that section 161.211 should not apply because the service of citation by publication was procured by fraud. He argues that it would be a due-process violation to dismiss his case pursuant to section 161.211 under these circumstances. In the findings of fact and conclusions of law, the trial court upheld the statutory dismissal. The trial court did not make any findings as to fraud in connection with service by publication, finding only that the Department and Salazar's attorney ad litem were unable to locate Salazar. *See* TEX. R. CIV. P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ground of recovery or defense, no element of which has been included in the findings of fact . . . .").

Texas Rule of Civil Procedure 109 authorizes service of citation by publication as follows:

> When a party to a suit, his agent or attorney, shall make oath that the residence of any party defendant is unknown to affiant, and to such party when the affidavit is made by his agent or attorney, or that such defendant is a transient person, and that after due diligence such party and the affiant have been unable to locate the whereabouts of such defendant, or that such defendant is absent from or is a nonresident of the State, and that the party applying for the citation has attempted to obtain personal service of nonresident notice as provided for in Rule 108,[4] but has been unable to do so, the clerk shall issue citation for such defendant for service by publication. In such cases it shall be the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant or to obtain service of nonresident notice, as the case may be, before granting any judgment on such service.

TEX. R. CIV. P. 109. Salazar argues that service by publication is invalid if such service is based on a fraudulent affidavit, and he argues that because Mayo provided the Department with false information concerning his whereabouts, the Department's service

---

[4] Texas Rule of Civil Procedure 108 concerns service of defendants in other states.

by publication is invalid. In support of this argument, he cites *Valasco v. Ayala*, 312 S.W.3d 783 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

In *Velasco*, both the husband and wife were citizens of Mexico residing in Mexico City. *Id.* at 787. While visiting family in Houston, the couple argued violently and police removed the wife to a women's shelter. *Id.* During her absence, her husband moved with their daughter, and the wife could not find them. *Id.* She returned to Mexico City and began proceedings through the Hague Convention on International Child Abduction, apparently unaware that her husband had filed suit in Harris County to divorce his wife and terminate her parental rights. *Id.* Although the husband included in his petition the address of the couple's apartment in Mexico City, he misstated his wife's name and moved for citation by publication, falsely attesting that her whereabouts were unknown. *Id.* at 788. The trial court granted the motion, published a citation in Harris County, and ultimately, granted the requested divorce and termination of parental rights. *Id.* at 789, 790.

The First Court of Appeals reversed the judgment, explaining that service of process on a defendant in Mexico is governed by the Hague Service Convention, and the citation by publication did not comply with the Convention's requirements. *Id.* at 792–95. In dicta, the court further stated that even if service by publication on a resident of Mexico could be permissible in some circumstances, it would have been both invalid and unauthorized on the facts presented. *Id.* at 795, 797. Such service would have been invalid because the husband misstated his wife's name, *id.* at 797, and service by publication would have been unauthorized because the affidavit on which it was based was fraudulent. *Id.* at 795–96. Specifically, the husband moved for citation by publication by filing an affidavit in which he swore that his wife's residence was unknown—even though he simultaneously filed a pleading in which he listed her address. *Id.* at 795.

No such factors are present in the case before us. Salazar does not contend that he resided in another country, or that his name was misstated, or that the Department knew

8

where he resided and falsely attested that his whereabouts were unknown. He argues only that Mayo, the child's mother, knew his phone number and the city in which he lived. This is a crucial distinction because Mayo is not the one who requested that Salazar be served with citation in this case, by publication or otherwise, and there is no evidence that the trial court's authorization for service by publication was based on Mayo's affidavit. In fact, there is evidence of only one affidavit ever executed by Mayo, and that is the affidavit in which she relinquished her own parental rights. This affidavit was executed over a month *after* Salazar was served with citation by publication.

Because there is no evidence in this case that the trial court relied on a fraudulent affidavit in authorizing service of citation by publication, we are not called upon to decide whether Texas Family Code section 161.211(b) would still apply in those circumstances. Here, the Department offered evidence in the underlying suit that despite its own diligence, Salazar's whereabouts were unknown. The chronology of the Department's efforts to locate Salazar is as follows: first, a representative of the Department attested on December 19, 2007 that after checking with the child's mother, all known friends, neighbors, and relatives, the father's name, date of birth, social security number, and address were unknown. On the same date, a proposed order was filed in the trial court for the appointment of an attorney ad litem to represent the child's alleged father. The proposed order identified Salazar by name, and was signed in January 2008. On June 15, 2009, the Department filed an amended petition identifying Salazar by name and stating that he was not a resident of Texas. On the same day, the citation by publication issued, and it was published in the *Daily Court Review* on June 19, 2009. On July 20, 2009, Mayo executed an affidavit of relinquishment in which she identified Salazar as the child's father, stated Salazar's date of birth, and represented that he lived in Harris County. The suit was heard on August 26, 2009, and at that time, Department employee Ke'sha Jacobs testified that although she attempted to locate Salazar in local directories, by using "Parent Locator Services," in both Texas and Florida and by

9

contacting the Texas Department of Criminal Justice and the local jails, his whereabouts remained unknown.

Salazar contends that the reviewing court must measure the validity of service by publication only by the opposing party's diligence in learning the defendant's whereabouts as those efforts are described in affidavit on which service by publication is based. The only evidence of the Department's due diligence that was admitted in the form of an affidavit was King's 2007 affidavit that she had been unable to learn even the name of the child's alleged father; however, we disagree that this affidavit was the only evidence of due diligence that the trial court properly could consider. Texas Rule of Civil Procedure 109 provides that it is "the duty of the court trying the case to inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant . . . *before granting any judgment on such service*." TEX. R. CIV. P. 109 (emphasis added). Thus, in concluding that due diligence has been shown, the trial court may consider all of the prejudgment efforts to learn the defendant's residence. Even if, as Salazar contends, Mayo was less than candid about Salazar's whereabouts, this does not mean that the Department was less than diligent in attempting to find him. To the contrary, in both the termination action and in the bill-of-review proceedings, the Department offered evidence of its diligence, and Salazar offered no controverting evidence. Salazar failed to prove that the service by publication was procured by fraud.

We accordingly hold that the trial court did not abuse its discretion in dismissing Salazar's suit as untimely under Texas Family Code section 161.211(b). We therefore overrule Salazar's first issue.[5]

## CONCLUSION

---

[5] In a second issue, Salazar argues that if the trial court addressed the merits of his challenge to the order terminating his parental rights, then it erred in failing to reverse the order. Based on our disposition of Salazar's first issue, however, we do not reach his remaining issue. Moreover, Salazar's arguments in support of his remaining issue are based in part on assertions of Florida law, which were not raised in the trial court. TEX. R. APP. P. 33.1(a).

Finding no abuse of discretion, we affirm the trial court's judgment.



/s/     Tracy Christopher
Justice


Panel consists of Justices Frost, Brown, and Christopher. (J. Frost, dissenting)

11