In re MAK PETROLEUM, INC., Debtor.

Gregory L. Atwater, as Chapter 7 Trustee, Plaintiff,

v.

The Light Korean Presbyterian Church (Islington), and Re/Max West Realty, Inc., Defendants.

Bankruptcy No. 3:08–bk–2067–PMG. Adversary No. 3:09–ap–435–PMG.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

Feb. 11, 2010.

Meghan R. Applegate, Raymond R. Magley, Smith Hulsey & Busey, Jacksonville, FL, for Plaintiff.

Nathan A. Carney, Trenam Kemker Scharf et al., Tampa, FL, for Defendants.

Re/Max West Realty, Inc., pro se.

## ORDER ON MOTION TO QUASH SERVICE OF PROCESS

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing to consider the Motion to Quash Service of Process filed by the Defendant, The Light Korean Presbyterian Church (Islington).

Gregory L. Atwater, as Chapter 7 Trustee (the Trustee), commenced this adversary proceeding by filing a Complaint to recover a deposit paid by the Debtor in connection with a Purchase and Sale Agreement. The Defendant is a Church located in Ontario, Canada. The issue is whether the Trustee properly served the Defendant with the summons and Complaint in accordance with Rule 4(f) of the Federal Rules of Civil Procedure.

### Background

The Debtor, Mak Petroleum, Inc., was engaged in the business of owning and operating a number of gas stations and convenience stores throughout Florida. (Main Case, Doc. 1).

The Defendant, The Light Korean Presbyterian Church (Islington) (the Church) is incorporated under the laws of Ontario, Canada, and has its principal place of business in Canada. (Doc. 6).

On November 18, 2006, the Debtor and the Church entered into an Agreement pursuant to which the Debtor agreed to purchase real property located in Ontario, Canada, from the Church. Pursuant to the Agreement, the Debtor deposited the sum of $100,000.00 with Re/Max West Realty, Inc. in Ontario. (Docs.1, 6).

The sale of the real property was not concluded. (Docs.1, 6).

On April 16, 2008, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.

On August 21, 2009, the Trustee filed a Complaint against the Church to recover the deposit.

On August 24, 2009, service of the summons and a copy of the Complaint was made "by mail service via Federal Express international, receipt requested" to the Church at its address in Ontario, Canada. (Doc. 3).

The Church subsequently filed a Motion to Quash Service of Process. In the Motion, the Church asserts that the Trustee "served the Complaint on the Church by mail. Pursuant to Rule 4(f)(1), F.R. Civ. P., Plaintiff is required to serve the Church in accordance with the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." (Doc. 8).

## Discussion

Rule 4(h) of the Federal Rules of Civil Procedure, as made applicable to this proceeding by Rule 7004(a) of the Federal Rules of Bankruptcy Procedure, provides that a foreign corporation must be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." F.R. Civ. P. 4(h)(2).

Rule 4(f) of the Federal Rules of Civil Procedure provides:

**Rule 4. Summons**

. . .

**(f) Serving an Individual in a Foreign Country.** Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) *by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;*

(2) *if there is no internationally agreed means, or if an international agreement allows but does not specify other means,* by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an

action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) *unless prohibited by the foreign country's law, by:*

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) *using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt;* or

(3) by other means not prohibited by international agreement, as the court orders.

F.R. Civ. P. 4(f)(Emphasis supplied).

■ Consequently, in order to serve a defendant in a foreign country, the plaintiff must first determine if an international treaty establishes the procedures for such service. *In re Maxon Engineering Services, Inc.*, 2009 WL 3052437, at *8 (Bankr. D.P.R.). If service is to be made in a country that is a party to such a treaty, service should be made in compliance with the international agreement. See *In re Chinin USA, Inc.*, 327 B.R. 325, 331 (Bankr.N.D.Ill.2005). If no such treaty exists, then the plaintiff may use one of the methods for service set forth in subsection (f)(2) of Rule 4. *In re Maxon Engineering Services, Inc.*, 2009 WL 3052437, at *8 (Bankr.D.Puerto Rico).

## I. An internationally agreed means of service

■ In this case, the Trustee attempted to serve the Church with a summons and copy of the Complaint that commenced this action. The Church is located in Ontario, Canada.

The United States and Canada are both signatories to the Convention on the Ser-

vice Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, generally known as the Hague Convention. "The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law." *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).

The purpose of the Hague Convention is "to create appropriate means to ensure that judicial and extrajudicial documents to be served abroad shall be brought to the notice of the addressee in sufficient time," and to "improve the organization of mutual judicial assistance for that purpose by simplifying and expediting the procedure." For the full text of the Hague Convention, see http://www.hcch.net.

Article I of the Hague Convention provides that the Convention "shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."

■ Given the express purpose of the Hague Convention, the United States Supreme Court has stated that "compliance with the Convention is mandatory in all cases to which it applies." *Volkswagenwerk,* 486 U.S. at 705, 108 S.Ct. 2104(quoted in *Malone v. Highway Star Logistics, Inc.,* 2009 WL 2139857, at *1 (D.Colo.)).

Because the United States and Canada are both signatories to the Hague Convention, because the Hague Convention applies in all cases where judicial or extrajudicial documents are transmitted for service abroad, and because compliance with the Hague Convention is mandatory in all cases where it applies, the Court finds that service of process on the Church in this case is governed by the provisions of the Hague Convention.

The United States and Canada are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra–Judicial Documents in Civil and Commercial Matters ("Hague Convention"). Federal law provides the Hague Convention to determine what constitutes service of process in the instant case. *See Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988); Fed.R.Civ.P. 4(f), 4(h)(2). *In re Greater Ministries International, Inc.,* 282 B.R. 496, 499 (Bankr.M.D.Fla. 2002). See also, *Darko, Inc. v. MegaBloks, Inc.,* 2006 WL 2945954, at *1 (N.D.Ohio)(The "Hague Convention clearly applies to this case, as Canada is a signatory to the convention and Defendant is a Canadian corporation."), and *Dimensional Communications, Inc. v. OZ Optics Limited,* 218 F.Supp.2d 653, 655 (D.N.J.2002)("Because the United States and Canada are both signatories to the Hague Convention, it is applicable to the present action.").

## II. Service pursuant to the Hague Convention

The Hague Convention provides for service upon a person located in a signatory country through a "Central Authority" designated by the country. Additionally, under the circumstances set forth therein, the Convention also permits service by certain alternative means.

### A. The Central Authority

Article 2 of the Hague Convention provides that "[e]ach Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organize the Central Authority in conformity with its own law."

Article 3 of the Hague Convention provides that the "authority or judicial officer competent under the law of the State in which the documents originate shall forward to the Central Authority of the State addressed a request conforming to the model annexed to the present Convention, without any requirement of legislation or other equivalent formality."

Article 5 of the Hague Convention provides that the "Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency."

■ As stated by the Supreme Court of the United States, the "primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk*, 486 U.S. at 698, 108 S.Ct. 2104. "The primary means by which service is accomplished under the Hague Service Convention is through a receiving country's 'central authority' designated to receive requests for service of documents from other countries." *Malone v. Highway Star Logistics, Inc.*, 2009 WL 2139857, at *1 (D.Colo.). See also *Lobo v. Celebrity Cruises, Inc.*, 2009 WL 3642817, at *12 (S.D.Fla.).

In accordance with the Convention, Canada has designated the Attorney General for Canada and the Ministry of the Attorney General for each province or territory, among other officials, as the Central Authority to receive requests for service. For a list of the officials designated by Canada as the Central Authority, see http://www.hcch.net, and go to "Canada—Central Authority & practical information." See also *Basham v. Tillaart*, 2003 WL 21780974, at *3 (Tenn.Ct.App.)("Canada has designated the Ministry of the Attorney General for Ontario ('Ministry') as the Central Authority for Ontario.").

## B. Alternatives to the Central Authority

As shown above, the primary method to accomplish service abroad under the Hague Convention is to request the designated Central Authority in the receiving country to effect service through an appropriate official. Several articles of the Convention, however, also permit service by certain alternative means.

Use of the Central Authority "is not the only acceptable method of service under the Convention. As recognized by the Third Circuit, the Hague Convention permits alternate channels of service so long as they are not objected to by the receiving State." *Dimensional Communications, Inc. v. OZ Optics Limited*, 218 F.Supp.2d at 655. See also *ePlus Technology, Inc. v. Aboud*, 155 F.Supp.2d 692, 696 (E.D.Va.2001)(The Central Authority "is not the sole or exclusive mode of service permitted under the Hague Convention; litigants of signatory nations are also allowed to undertake various alternative methods of service under certain circumstances.").

Articles 8, 9, 10, 11, and 19, for example, provide that a signatory country "may consent to methods of service within its boundaries other than a request to its central authority." *Volkswagenwerk*, 486 U.S. at 699, 108 S.Ct. 2104. Specifically, Articles 8 and 9 permit signatory countries to agree that diplomatic or consular channels may be used to effect service in the receiving country, and Article 11 permits signatory countries to agree that service may be effected through "channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities."

### 1. Article 10

■ In this case, the Trustee "mailed" the summons and a copy of the Complaint

to the Church at its address in Ontario, Canada, "via Federal Express, receipt requested." (Doc. 3). The issue, therefore, is whether the Convention allows the Trustee to effect service by mailing the summons and Complaint directly to the Church in Canada.

Article 10 of the Hague Convention provides an alternative method of service, as follows:

### Article 10

Provided the State of destination does not object, the present Convention shall not interfere with—

a) the freedom to *send* judicial documents, *by postal channels,* directly to persons abroad,

b) the freedom of judicial officers, officials or other competent persons of the State of origin *to effect service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,

c) the freedom of any person interested in a judicial proceeding *to effect service* of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

(Emphasis supplied).

The issue of service by mail pursuant to Article 10 has generated significant discussion among courts in various circuits. As recently summarized by the District Court for the Southern District of Florida, for example:

Article 10 of the Hague Convention provides several exceptions to the procedure set forth in Article 5. Specifically, Article 10(a) states that, provided the State of destination does not object, "the present Convention shall not interfere with ... (1) the freedom to send judicial documents, by postal channels, directly to persons abroad." To that end, sever-

al Circuits have concluded the word "send" includes service of process, and have permitted service by direct mail under Article 10(a), without resorting to the complicated procedures set forth in Article 5. (Citations omitted). Others have held that the freedom to "send judicial documents" under Article 10(a) does not include "service of process," but rather encompasses documents sent only after service of process is effected. (Citations omitted.) *The Eleventh Circuit has not ruled on the matter, and my sister courts in this circuit are split.* Lobo v. Celebrity Cruises, Inc., 2009 WL 3642817, at *12(Emphasis supplied).

The Court has evaluated the language of Article 10(a) and the cases that have dealt with it, and agrees with those decisions finding that the provision does not permit service of the original summons and Complaint by direct mail.

Article 10(a) refers to "sending" documents by mail, and Article 10(b) and 10(c) refer to "effecting service" through judicial officers. The Article internally recognizes "the distinction between serving original or leading process to properly notify foreign defendants of a pending action on the one hand and the sending of other judicial documents after the initial service of process on the other." *Basham v. Tillaart,* 2003 WL 21780974, at *4. The "sending" of judicial documents differs fundamentally from the "serving" of complaints, as acknowledged by the United States Supreme Court when it explained that the use of the term "service of process" in the Hague Convention has a "well established technical meaning." *Darko v. MegaBloks, Inc.,* 2006 WL 2945954, at *2(quoting *Volkswagenwerk,* 486 U.S. at 700, 108 S.Ct. 2104). The word "send" in Article 10(a) should not be read to incorporate the word "serve," but should instead be read only to enable parties to "send documents, e.g.

motions and discovery responses, after service has been perfected." *In re Greater Ministries International, Inc.*, 282 B.R. at 503. See also *Humble v. Gill*, 2009 WL 151668 (W.D.Ky.)(The "plain language of the treaty precludes reading 'send' to include 'service of process.' ").

In this regard, it should be noted that Canada has submitted declarations to the Convention concerning Article 10, subparagraph (a), indicating that it "does not object to service by postal channels," and that "Canadian law allows the use of postal channels to serve Canadian documents to persons abroad." See http://www.hcch.net, and go to Oppositions and Declarations. It is significant, however, that the declarations appear in specific reference to Article 10, subparagraph (a) of the Convention, which expressly addresses "sending" documents by postal channels, but not effecting original service of process, as provided by Article 10, subparagraphs (b) and (c). Consequently, it appears that the declarations relate only to "service" of subsequent documents after the initial service of process has been effected, as intended by the context of Article 10(a).

The Court recognizes that a purpose of the Convention is to facilitate the international service of judicial documents. *Conax Florida Corp. v. Astrium Ltd.*, 499 F.Supp.2d 1287, 1293 (M.D.Fla.2007)(quoting *Brockmeyer v. May*, 383 F.3d 798, 802 (9th Cir.2004)). In this case, however, the Court finds that Article 10(a) of the Hague Convention did not authorize the Trustee to effect initial service of process by mailing the summons and Complaint directly to the Church in Canada.

## 2. Article 19

█ Article 19 of the Hague Convention provides another alternative method of service, as follows:

Article 19

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, *of documents coming from abroad,* for service within its territory, the present Convention shall not affect such provisions.

(Emphasis supplied).

In *Humble v. Gill*, 2009 WL 151668 (W.D.Ky.), a plaintiff in Kentucky had attempted to serve a corporate defendant in Ontario, Canada with a summons and complaint by certified mail. In response to the defendant's motion to dismiss, the plaintiff asserted that Article 19 of the Hague Convention permitted service by certified mail "because service by direct mail is authorized under internal Canadian law, i.e. Ont. R. Civ. P. 16." *Humble v. Gill*, 2009 WL 151668, at *2.

In *Humble,* the parties agreed that Rule 16 of the Ontario Rules of Civil Procedure was the relevant Canadian law for purposes of Article 19. *Id.* at *3. Rule 16 is entitled "Service of Documents," and generally provides that an "originating process shall be served personally as provided in rule 16.02 or, by an alternative to personal service as provided in rule 16.03." Rule 16.03 provides for alternatives to personal service in certain situations, such as service by mail if the defendant cannot be found at his last known address.

In any event, the Court in *Humble* determined that Rule 16 was not the type of law contemplated by Article 19 of the Hague Convention, because it does not relate to methods for international service in Canada.

Article 19 leaves intact internal laws that permit "methods of transmission ... coming from abroad." Hague Convention art. 19, 20 U.S.T. 361. It does not transform internal methods of intra-

state service into methods of interstate service. Thus, because Ontario Rule of Civil Procedure 16 does not authorize the use of registered mail for *international* service of process in Canada, Plaintiff has not shown that his service was proper under internal Canadian law for purposes of Article 19. See Ont. R. Civ. P. 16.

*Humble,* 2009 WL 151668, at *3(Emphasis supplied). The Court quashed the summons and granted the plaintiff leave to correct service. *Id.* at *3.

Although not discussed in *Humble,* Rule 17 of the Ontario Rules of Civil Procedure is also relevant for purposes of evaluating Article 19 of the Convention. Rule 17 is entitled "Service Outside Ontario." Rule 17.05(3) provides:

**17.05 Manner of Service Outside Ontario**

17.05(1) In this rule,

"contracting state" means a contracting state under the Convention;

"Convention" means the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters signed at The Hague on November 15, 1965.

. . .

17.05(3) An originating process or other document to be served outside Ontario in a contracting state shall be served,

(a) through the central authority in the contracting state; or

(b) in a manner that is permitted by Article 10 of the Convention and that would be permitted by these rules if the document were being served in Ontario.

Ont. R. Civ. P. 17.05(3). Rule 17.05, of course, relates to documents transmitted *to* other countries for service, and not documents "coming *from* abroad," as contemplated by Article 19. Nevertheless, with respect to service across international borders, the Rule appears to reflect Canada's preference for the procedures established by the Hague Convention. Further, since Rule 17.05 provides that process outside Canada must be effected in accordance with the Hague Convention, it would be anomalous for other internal Canadian law to permit foreign parties to serve Canadian residents by mail, without regard to the procedures set forth in the Convention.

The Court finds that the Trustee's attempted service on the Church was not authorized pursuant to Article 19 of the Hague Convention. "Article 19 is appropriately and sensibly read as allowing only those methods of service explicitly sanctioned by the contracting state." *ePlus Technology, Inc. v. Aboud,* 155 F.Supp.2d at 700. Neither Rule 16 nor Rule 17 of the Ontario Rules of Civil Procedure expressly permit foreign plaintiffs to serve Canadian defendants by direct mail.

**Conclusion**

The Trustee served the Church with a summons and copy of the Complaint by "Federal Express international, receipt requested." The issue is whether the Trustee properly served the Church with the summons and Complaint in accordance with Rule 4(f) of the Federal Rules of Civil Procedure.

The United States and Canada are both signatories to the Hague Convention. Consequently, since the countries are parties to an "internationally agreed means of service," and since the Hague Convention applies in all cases where judicial documents are transmitted for service abroad, service of process in this case is governed by the provisions of the Convention pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure.

The primary method of service under the Convention is through a Central Au-

thority designated by each contracting country. Additionally, the Convention also permits certain alternative methods of service, provided the receiving country consents to the alternative methods. In this case, however, initial service of process by direct mail to a defendant in Ontario, Canada is not an authorized alternative method of service under either Article 10 or Article 19 of the Convention.

The Church's Motion to Quash Service of Process should be granted.

Accordingly:

**IT IS ORDERED** that the Motion to Quash Service of Process filed by the Defendant, The Light Korean Presbyterian Church (Islington), is granted, and the service of process attempted by the Trustee is quashed.