*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





★ ★ ★ ★ ★ ★ ★

# OPINION

No. 04-10-00646-CV

In the Interest of **J.P.L.**

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2009-CI-17605
Honorable Larry Noll, Judge Presiding

Opinion by: Karen Angelini, Justice

Sitting: Karen Angelini, Justice
Steven C. Hilbig, Justice
Marialyn Barnard, Justice

Delivered and Filed: November 23, 2011

PETITION FOR WRIT OF MANDAMUS CONDITIONALLY GRANTED

This case involves the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA").[1] Jean Phillipe Lacombe appeals (1) a default order directing him to return his child, J.P.L., to J.P.L.'s mother, Berenice Concepcion Diaz Romero; and (2) an order denying a special appearance and a plea to the jurisdiction. Alternatively, in the absence of appellate jurisdiction, Lacombe asks that this appeal be construed as a petition for a writ of mandamus.

---

[1] Parts of Chapter 152 of the Texas Family Code, the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), apply to an action filed under the Hague Convention on the Civil Aspects of International Child Abduction ("Hague Convention") and its implementing legislation, the International Child Abduction Remedies Act ("ICARA"). *See, e.g.*, TEX. FAM. CODE ANN. § 152.301 (West 2008).

We conclude this court lacks appellate jurisdiction over the challenged orders, and grant Lacombe's request to construe his appeal as a petition for a writ of mandamus. As to the merits, we conclude service of process on Lacombe was required, and the absence of proper service of process renders the default order against Lacombe void. We further conclude the trial court abused its discretion in denying the special appearance, which argued Lacombe was not properly served with process. We conditionally grant the petition for a writ of mandamus on the issue of service of process, and overrule all other issues presented.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The parties, Lacombe and Diaz, obtained a divorce from a court in Mexico in 2004. This divorce decree awarded custody of J.P.L. to Lacombe; however, according to Diaz, there is a subsequent order from a Mexican court that awards custody of J.P.L. to her.

### A. *Lacombe files a Petition under the Hague Convention and the ICARA*

On October 15, 2009, Lacombe, who is a resident of Mexico, filed a petition for enforcement of a child custody determination under the Hague Convention and the ICARA in Bexar County, Texas. In his petition, Lacombe alleged that J.P.L. was in Diaz's custody and was residing in San Antonio, Texas. Lacombe further alleged that he was entitled to custody of J.P.L. and that Diaz had no right to custody of J.P.L. Attached to Lacombe's petition was a certified copy of the parties' Mexican divorce decree. Lacombe requested that he be awarded immediate custody of J.P.L. The trial court granted Lacombe's request for a warrant to take physical custody of J.P.L., and ordered Lacombe and Diaz to appear before the trial court on Monday, October 19, 2009, for a hearing on Lacombe's petition. The warrant was executed promptly, and Lacombe obtained custody of J.P.L. before the hearing.

On October 19, 2009, Diaz appeared in the trial court as ordered. However, neither Lacombe, nor J.P.L., who was already in Lacombe's custody, appeared in court. On the same day, Lacombe filed a motion to nonsuit his action, and the trial court signed an order nonsuiting Lacombe's action.

### B. Diaz Files a Petition under the Hague Convention and the ICARA

On October 28, 2009, Diaz filed her own petition under the Hague Convention and the ICARA in Bexar County, Texas, seeking J.P.L.'s return. Diaz alleged an order was rendered by a Mexican court that entitled her to possession of J.P.L., and that the same order denied Lacombe possession of J.P.L. of any kind. Diaz further alleged that she had a right of custody because this order provided J.P.L. was to remain in her custody. Diaz requested an "order commanding that the child [be] brought immediately before the Court and that [she] be awarded immediate physical custody of the child." Seven months later, on May 28, 2010, the trial court signed an order consolidating Lacombe's nonsuited case into Diaz's case.

### C. The Trial Court Grants Diaz Relief on her Petition

On July 19, 2010, the trial court held a hearing on Diaz's second amended petition. Lacombe did not appear at this hearing. On August 17, 2010, the trial court signed an order granting Diaz's petition. The default order, titled "Order for Enforcement of Child Custody Determination Pursuant to the Hague Convention and the International Child Abduction Remedies Act (I.C.A.R.A.)," recognizes Diaz as the "legal custodian of the child [J.P.L.] pursuant to the Orders of the Superior Justice Court of the Federal District of the Republic of Mexico and by the authority of the Hague Convention on the Civil Aspects of International Child Abduction." The order also recites that "proper service for the instant suit was had upon

[Lacombe] pursuant to the terms of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents and the laws of the Republic of Mexico."

### D. *Lacombe Files a Notice of Appeal, Special Appearance, and a Plea to the Jurisdiction*

On September 7, 2010, Lacombe filed a notice of appeal, challenging the August 17, 2010, order. On the same day, Lacombe also filed a verified special appearance and a plea to the jurisdiction. In his special appearance, Lacombe argued that the trial court lacked personal jurisdiction over him because (1) he lacked the requisite minimum contacts with the State of Texas and was not amenable to service of process;[2] and (2) Diaz failed to obtain or demonstrate proper service of process over him. Lacombe further alleged the court's file did not show a return of service for the action or any other document that supports the trial court's finding regarding proper service. According to Lacombe's special appearance, the August 17, 2010, order was void and failed to comply with the due process requirements of fair notice and hearing.

In his plea to the jurisdiction, Lacombe argued the trial court lacked subject matter jurisdiction because (1) the custody matters in this case were wholly within the exclusive subject matter jurisdiction of Mexico, as provided by Chapter 152 of the Texas Family Code; (2) the trial court had no jurisdiction to enforce a Mexican custody determination because at the time of filing Diaz's action the child was not in Texas; (3) the courts in Mexico had exclusive subject matter jurisdiction over matters relating to the child; and (4) Diaz failed to provide a sworn, true account of the rulings of the Mexican courts and other information required by the UCCJEA.

---

[2]In their briefs, the parties presented arguments concerning minimum contacts. However, at oral argument, Lacombe's counsel conceded that minimum contacts analysis did not apply in the context of a Hague/ICARA action. We, therefore, need not address the minimum contacts arguments presented in the parties' briefs.

### *E. The Trial Court Denies Lacombe's Special Appearance and Plea to the Jurisdiction*

The trial court held an evidentiary hearing on Lacombe's special appearance and plea to the jurisdiction. At this hearing, Lacombe argued the trial court lacked personal jurisdiction and subject matter jurisdiction to render its August 17, 2010, order. Lacombe called an expert, David Lopez, to testify about Mexican law and how service of process for actions filed in the United States was properly effectuated on defendants who were residents of Mexico. Lopez based his testimony on the Hague Service Convention. In particular, Lopez testified that the only way for Diaz to have properly served Lacombe in Mexico was for the service documents to have been transmitted to Mexico's Central Authority, which in turn would have served process on Lacombe. Lopez further pointed out that there was nothing in the court's file confirming that Lacombe was in fact served with process in this case; the service returns in the court's file were blank.

In response, Diaz stipulated that Lacombe was not served through Mexico's Central Authority. Diaz argued, however, that other means of service were proper in this case. Diaz's expert, Helena Huerta Psihas, testified Lacombe was still properly served because he was served in accordance with the internal law of Mexico, which allowed for service on Lacombe by serving Lacombe's designated agent, Daniel Pineda Barreda.

On October 25, 2010, the trial court signed an order denying Lacombe's special appearance and plea to the jurisdiction. This order also stated that "the implementation of the order of August 17, 2010 . . . is abated pending rehearing of Petitioner's Second Amended Petition due to the lack of proper notice to Respondent." Lacombe then filed an amended notice of appeal, expressing his intention to appeal both the August 17, 2010, order and the October 25, 2010, order.

### F.  Arguments Presented on Appeal

Lacombe argues the trial court should have granted his special appearance based on a lack of service of process, and should have granted his plea to the jurisdiction based on a lack of subject matter jurisdiction. Lacombe further argues the August 17, 2010, and the October 25, 2010, orders are void and must be set aside. In response, Diaz argues this court has no jurisdiction to review the August 17, 2010, order because the order is not a final order by virtue of the October 25, 2010, order abating its implementation. Diaz takes the position that this court has jurisdiction to review the October 25, 2010, order, but argues the trial court's denial of the special appearance was proper.

## II.    APPELLATE JURISDICTION

We first determine whether this court has appellate jurisdiction to review the challenged orders. Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Interlocutory orders may be appealed only if expressly permitted by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001).

### A.  August 17, 2010, Order

A final order in an enforcement proceeding under Chapter 152 of the Texas Family Code may be appealed. TEX. FAM. CODE ANN. § 152.314 (West 2008). Lacombe argues the August 17, 2010, order is a final order under section 152.314 of the Texas Family Code and, therefore, this court has appellate jurisdiction.[3] We disagree. The record shows that the implementation of the

---

[3]Section 152.314 provides,

> An appeal may be taken from a final order in a proceeding under this subchapter in accordance with expedited appellate procedures in other civil cases. Unless the court enters a temporary emergency order under Section 152.204, the enforcing court may not stay an order enforcing a child custody determination pending appeal.

TEX. FAM. CODE ANN. § 152.314 (West 2008).

August 17, 2010, order was abated by the trial court in its October 25, 2010, order. The purpose of this abatement was to allow the trial court to hold a contested hearing and reconsider the merits of Diaz's petition. Thus, the trial court's August 17, 2010, order is not a final order under section 152.314.

### B. *October 25, 2010, Order*

As a general rule, an order granting or denying a special appearance is an appealable interlocutory order; however, in an action brought under the Texas Family Code there is no right to an interlocutory appeal of an order granting or denying a special appearance. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West 2008). The present case was brought under the Texas Family Code. Thus, there is no right to an interlocutory appeal of the trial court's October 25, 2010, order denying the special appearance.

Because this case involves neither a final judgment, nor an interlocutory order that is subject to an interlocutory appeal, we conclude there is no appellate jurisdiction to review the challenged orders.

### III. MANDAMUS JURISDICTION

Lacombe argues that if this court determines it has no appellate jurisdiction, then his appeal should be construed as a petition for a writ of mandamus. According to Lacombe, there is no sound basis for dismissing this appeal because he has gone to great expense to develop the record and to present his issues for this court's review. Lacombe also points out that he is arguing the challenged orders are void, and void orders are reviewable by mandamus.

Under analogous circumstances, the Texas Supreme Court held that an interlocutory appeal should not have been dismissed for lack of jurisdiction, but instead should have been considered as a petition for a writ of mandamus as requested by the appellant. *CMH Homes v.*

*Perez*, 340 S.W.3d 444, 454 (Tex. 2011) (holding, in an interlocutory appeal from an arbitration order, that appellate court should not have dismissed appeal for lack of jurisdiction, but instead should have granted appellant's request to construe his appeal as a petition for a writ of mandamus). "Texas policy as embodied in our appellate rules . . . disfavors disposing of appeals based upon harmless procedural defects." *Id*. at 453 (internal quotations and citations omitted). In light of this instruction, and the supreme court's holding in *CMH Homes*, we construe Lacombe's appeal as a petition for a writ of mandamus. *See id.* at 454.

## IV.   MANDAMUS STANDARD OF REVIEW

A writ of mandamus will issue when a trial court clearly abuses its discretion and there is no adequate remedy by appeal. *In re John G. and Marie Stella Kenedy Mem'l Found.*, 315 S.W.3d 519, 522 (Tex. 2010) (orig. proceeding). Mandamus is proper if a trial court issues an order that exceeds its jurisdictional authority. *Id*. When the trial court's order is void, mandamus relief is available regardless of whether there is an adequate remedy by appeal. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding); *In re Mask*, 198 S.W.3d 231, 233-34 (Tex. App.—San Antonio 2006, orig. proceeding). A judgment is void only when it is shown that the court had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act as a court. *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

## V.   THE HAGUE CONVENTION AND ITS IMPLEMENTING LEGISLATION

The Hague Convention, a multinational treaty, was created to "protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence." Hague Convention on Civil Aspects of International Child Abduction, Preamble, October 25, 1980, 19

I.L.M. 1501. Both the United States and Mexico are parties to the treaty. The procedures for implementing the Hague Convention in the United States are set out in the ICARA, which was passed by Congress in 1988. *See* 42 U.S.C. § 11601(b)(1). A petitioner in an action under the Hague Convention "shall establish by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the Convention." *Id*. § 11603 (e)(1)(A). The court's role in applying the Hague Convention is not to resolve the merits of a custody dispute; instead, the court is to determine the narrow issue of whether the child was removed or retained wrongfully from his habitual residence. *Id*. § 11601(b)(4).

For a removal or retention to be wrongful under the Hague Convention, it must be in breach of "rights of custody" of a person under the law of the State in which the child was habitually residing. Hague Convention, art. 3, 19 I.L.M. 1501. "Rights of custody" may be interpreted more broadly than rights to physical possession of a child, and may include rights relating to the care of the person of the child and the right to determine the child's place of residence. *In re S.J.O.B.G.*, 292 S.W.3d 764, 775 n.7 (Tex. App.—Beaumont 2009, no pet.).

According to the ICARA, "[n]otice of an action" "shall be given in accordance with the applicable law governing notice in interstate child custody proceedings." 42 U.S.C. § 11603(c). In Texas, notice in interstate child custody proceedings is governed by Section 152.108 of the Texas Family Code, which provides,

> ### § **152.108. NOTICE TO PERSONS OUTSIDE STATE**
>
> > (a) Notice required for the exercise of jurisdiction when a person is outside this state may be given in a manner prescribed by the law of this state for service of process or by the law of the state in which the service is made. Notice must be given in a manner reasonably calculated to give actual notice but may be by publication if other means are not effective.

(b) Proof of service may be made in the manner prescribed by the law of this state or by the law of the state in which the service is made.

(c) Notice is not required for the exercise of jurisdiction with respect to a person who submits to the jurisdiction of the court.

TEX. FAM. CODE ANN. § 152.108 (West 2008).

## VI. SERVICE OF PROCESS

As a preliminary matter, we must determine if Lacombe was entitled to service of process of Diaz's Hague/ICARA action. "[T]he term 'service of process' has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 700 (1988).

### A. *Effect of the Consolidation Order*

Diaz argues she was not required to serve Lacombe with process because she filed a motion to consolidate Lacombe's action into her action, and the trial court granted her motion to consolidate. Diaz's argument is premised on section 152.108(c) of the Texas Family Code, which provides, "Notice is not required for the exercise of jurisdiction with respect to a person who submits to the jurisdiction of the court." TEX. FAM. CODE ANN. § 152.108(c). Diaz contends that because Lacombe submitted to the jurisdiction of the Texas court when he filed his own Hague/ICARA action and because Lacombe's action was consolidated into her action, she was not required to serve Lacombe with process.

We disagree with Diaz's argument that she was not required to serve Lacombe with process. Texas Rule of Civil Procedure 162 authorizes a plaintiff to dismiss a case or take a nonsuit at any time before he has introduced all his evidence. *See* TEX. R. CIV. P. 162. The issuance of a written order granting the motion for nonsuit, which dismisses the entire case,

represents a written judgment entered of record. *America's Favorite Chicken Co. v. Galvan*, 897 S.W.2d 874, 878 (Tex. App.—San Antonio 1995, writ denied). A judgment granting a nonsuit becomes final thirty days after it is signed, provided no motion for new trial or other plenary power extending motion is filed. *Id.*; *Harris Co. Appraisal Dist. v. Wittig*, 881 S.W.2d 193, 194 (Tex. App. [1st Dist.] 1994, no writ). At that point, the trial court's plenary power expires. *Galvan*, 897 S.W.2d at 878.

Here, Lacombe moved to nonsuit his Hague/ICARA action on October 19, 2009. The trial court signed an order granting his motion for nonsuit the same day, which in effect dismissed Lacombe's case. On November 7, 2009, Diaz filed a motion to reinstate Lacombe's Hague/ICARA action. Even if we assume the motion to reinstate operated to extend the trial court's plenary power over Lacombe's action, the motion to reinstate was denied by operation of law on January 4, 2010.[4] *See* Tex. R. Civ. P. 165a(3). The trial court lost plenary power over Lacombe's action thirty days after the motion to reinstate was denied by operation of law. *See id.*; *Galvan*, 897 S.W.2d at 878.

The trial court's order granting Diaz's motion to consolidate was not signed until May 28, 2010, which was long after the trial court's plenary power over Lacombe's Hague/ICARA action had expired.[5] An order signed after the trial court loses plenary power is void. *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 72 (Tex. 2008) (orig. proceeding); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998) (orig. proceeding). Thus, the consolidation order signed by the trial court was void and of no effect. We reject Diaz's argument that she was not required to serve Lacombe with process based on the consolidation order.

---

[4]The reporter's record shows the trial court held a hearing on the motion to reinstate and denied the motion. However, the clerk's record does not contain a written order denying the motion to reinstate.

[5]Diaz filed two motions to consolidate, the first one on November 11, 2009, and the second one on April 21, 2010.

Section 152.108(a) of the Texas Family Code, which pertains to Hague/ICARA actions filed in Texas, requires service of process on a respondent in a Hague/ICARA action. TEX. FAM. CODE ANN. § 152.108(a). We, therefore, conclude Diaz was required to obtain service of process on Lacombe. *See id.*

### B. *International Service of Process*

Service of process on a defendant in Mexico is governed by another multinational treaty, the Hague Service Convention. *Velasco v. Ayala*, 312 S.W.3d 783, 792 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Both the United States and Mexico are parties to the Hague Service Convention, which applies in all civil or commercial matters where it is necessary to transmit a judicial document for service abroad. *Id.* The purpose of the Hague Service Convention is "not only to simplify and expedite international service of process, but more importantly, to ensure that service is effected timely and adequately." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 383 (5th Cir. 2002).

The Hague Service Convention provides for service of process upon a person located in a signatory country through a "Central Authority" designated by the country. *See* Hague Service Convention, November 15, 1965, arts. 2-5, 20 U.S.T. 361. "The primary innovation of the Convention is that it requires each [country] to establish a central authority to receive request for service of documents from other countries." *Volkswagenwerk*, 486 U.S. at 698. Thereafter, the Central Authority of the country addressed either serves the documents itself or has them served by an appropriate agency. *See* Hague Service Convention, art. 5. The Hague Service Convention also addresses service by alternative methods.

One alternative method of service, Article 19, provides, "[t]o the extent the internal law of a Contracting State permits methods of transmission…of documents *coming abroad*, for

service within its territory, the present Convention shall not affect such provisions." Hague Service Convention, art. 19 (emphasis added). Some courts have held that Article 19 applies to situations in which the internal law of the contracting state specifically provides for the service of documents coming from abroad. *See GMA Accessories, Inc. v. BOP LLC*, No. 07 Civ. 3219, 2009 WL 2856230, at *3 (S.D. N.Y. August 28, 2009); *Humble v. Gill*, No. 1:08-CV-00166, 2009 WL 151668, at *2 (W.D. Ky. Jan. 22, 2009); *In re Mak Petroleum*, 424 B.R. 912, 919-20 (Bankr. M.D. Fla. 2010). As one court has stated, "Article 19 leaves intact internal laws that permit 'methods of transmission . . . coming from abroad.' It does not transform internal methods of intrastate service into methods of interstate service." *Humble*, 2009 WL 151668, at *2 (citation omitted). Other courts have interpreted Article 19 more broadly, suggesting that a litigant from a foreign jurisdiction may use any method of service permitted by the internal laws of the contracting state. *See, e.g., EPlus Techn., Inc. v. Aboud*, 155 F.Supp.2d 692, 697-700 (E.D. Va. 2001); *Fernandez v. Univan Leasing*, 790 N.Y.S.2d 155, 156 (N.Y. App. Div. 2005).

We are of the opinion that the former cases are better reasoned and, therefore, adopt their interpretation of Article 19. We conclude Article 19 applies only when the internal law of the contracting state specifically provides for the service of documents coming from abroad. *See GMA Accessories*, 2009 WL 2856230, at *3; *Humble*, 2009 WL 151668, at *2; *In re Mak Petroleum*, 424 B.R. at 919-20. Thus, in order for Diaz to establish that service of process on Lacombe complied with Article 19 of the Hague Service Convention, she was required to show that the service of process method employed in this case complied with the internal law of Mexico providing for the service of documents coming from abroad.

### C.    *Standard for Reviewing Service of Process*

To uphold a default judgment in Texas, strict compliance with the rules of service must be evident from the record. *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994). When a default judgment is challenged, "[t]here are no presumptions in favor of valid issuance, service, and return of citation." *Id*. Instead, the plaintiff who obtained the default judgment has the burden to prove that each element of service was proper. *See id*. at 153. If the record fails to show strict compliance with the rules relating to issuance, service, and return of citation, then attempted service of process is invalid and of no effect. *Uvalde Country Club v. Martin Linen Supply Co., Inc.*, 690 S.W.2d 884, 885 (Tex. 1985).

### D.    *Application*

Here, Lacombe argues the record fails to establish that he was served with process in compliance with the Hague Service Convention or any other law. In support of this argument, Lacombe points to the testimony of his expert, David Lopez. Lopez, who was qualified as an expert in service under the Hague Service Convention, testified that the only manner in which Lacombe could have been properly served was through Mexico's Central Authority. Diaz stipulated she never attempted service through the Central Authority.

In response, Diaz argues Article 19 of the Hague Service Convention and the testimony of her expert, Helena Huerta Psihas, show Diaz carried her burden to prove proper service on Lacombe. Diaz stipulated in the trial court that she was not offering Huerta as a Hague Service Convention expert; instead Diaz offered Huerta as an expert on service of process in Mexico. Huerta testified that her understanding was that service was effective on Lacombe in accordance with Mexico's procedural requirements. Specifically, Huerta testified that the documents were

properly served because they were delivered to Lacombe's designated legal representative, Daniel Pineda Barreda.[6]

Through Huerta's testimony, Diaz attempted to show that Lacombe was served as parties would ordinarily be served with documents in an action filed in Mexico. However, Huerta never testified about the internal law of Mexico with respect to the service of documents coming from abroad. Diaz provided no evidence or law demonstrating whether and how the internal laws of Mexico authorized the service of documents coming from abroad. Thus, Article 19 of the Hague Service Convention is inapplicable here. *See Humble*, 2009 WL 151668, at \*2 (rejecting contention that international service by direct mail was proper under Article 19 because Canada's internal law did not authorize the use of registered mail for international service of process in Canada); *In re Mak Petroleum*, 424 B.R. at 921 (concluding attempted service of a defendant in Canada was not authorized pursuant to Article 19 of the Hague Convention).

Based on our interpretation of the Hague Service Convention, Diaz was required to serve Lacombe through Mexico's Central Authority. As previously mentioned, Diaz stipulated Lacombe was not served through Mexico's Central Authority. We conclude the record fails to show Lacombe was properly served with process under the Hague Service Convention.

Moreover, the clerk's record contains no return of service proving service of process on Lacombe. The lack of any completed service return in the clerk's record further underscores the lack of strict compliance with the rules relating to service. *See* TEX. R. CIV. P. 108(a)(2) ("Proof of service may be made as prescribed by the law of the foreign country, by order of the court, by Rule 107, or by a method provided in any applicable treaty or convention.").

---

[6]The record shows Pineda Barreda refused to accept service of process on behalf of Lacombe, asserting he held a power of attorney limited to receiving service of process in Lacombe's divorce action and, therefore, was not authorized to accept service of process in a Hague/ICARA action.

Texas procedural law and constitutional due process required that Lacombe be served, waive service, or voluntarily appear before judgment was rendered. *See* TEX. R. CIV. P. 124 ("In no case shall judgment be rendered against any defendant unless upon service, or acceptance or waiver of process, or upon an appearance by the defendant . . ."). Because the record before us fails to show that Lacombe was properly served with process, waived service, or voluntarily appeared, we conclude the trial court had no authority to render the August 17, 2010, judgment against Lacombe. Accordingly, the August 17, 2010, order is void and must be vacated.

## VII. TRIAL COURT'S JURISDICTION

Lacombe also challenges the August 17, 2010, order based on the trial court's jurisdiction. Lacombe makes two types of jurisdictional arguments. First, Lacombe asserts that Diaz's petition failed to invoke the subject matter jurisdiction of the trial court. Second, Lacombe asserts that even if the trial court had subject matter jurisdiction, it either exceeded the scope of its jurisdiction, or it was required to decline to exercise its jurisdiction.

### A. *Standard of Review*

We review the trial court's ruling on a plea to the jurisdiction *de novo*. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). A plea to the jurisdiction challenges the trial court's authority to decide the subject matter of the cause of action. *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.). A plaintiff has the initial burden of presenting allegations that affirmatively demonstrate the trial court's jurisdiction to hear a cause. *Miranda*, 133 S.W.3d at 226. When determining if subject matter jurisdiction exists, we look to the plaintiff's live pleadings to determine if the plaintiff has met her burden by pleading facts affirmatively demonstrating the trial court's subject matter jurisdiction. *Id.* We construe the pleadings liberally in favor of the plaintiff and look to the plaintiff's intent. *Id.*

**B.**      *Diaz's Petition Invoked the Trial Court's Subjection Matter Jurisdiction*

In challenging the trial court's subject matter jurisdiction, Lacombe argues (1) Diaz's pleadings were insufficient to trigger the trial court's Hague/ICARA jurisdiction; (2) Diaz's pleadings impermissibly asked the trial court to rule on the merits of the on-going custody dispute; and (3) Diaz's pleadings did not trigger Chapter 152's enforcement jurisdiction because she did not attach a controlling custody order from the Mexican court. We find these arguments unconvincing.

The ICARA gives concurrent original jurisdiction to state and federal district courts to hear Hague Convention proceedings. *See* 42 U.S.C. § 11603(a). To commence judicial proceedings under the ICARA, the petitioner may petition for the return of a child who has been wrongfully removed from the child's habitual residence in "any court that has jurisdiction . . . and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." *Id*. § 11603(b); *see In re A.V.P.G.*, 251 S.W.3d 117, 122-23 (Tex. App.—Corpus Christi 2008, no pet.). A petitioner in an action brought under the ICARA "shall establish by a preponderance of the evidence . . . that the child has been wrongfully removed or retained within the meaning of the Convention." *Id*. § 11603 (e)(1)(A).

Diaz's live pleading, her second amended petition, is titled, "Petition for Enforcement of Child Custody Determination Pursuant to the Hague Convention and the International Child Abduction and Remedies Act (ICARA)." This pleading alleges that Lacombe "wrongfully and forcefully obtained custody" of J.P.L., and that J.P.L. was "abducted and [taken] away from his lawful custodian, [] Diaz." The petition further alleges the court of original and continuing jurisdiction had given permanent custody of J.P.L. to Diaz. No documents are attached to the second amended petition; however, the petition incorporates by reference all exhibits attached to

the original petition, which has three exhibits attached to it. Diaz's original petition also stated, "The child the subject of this suit is belie[ved] to be presently located in San Antonio, Texas." Thus, in her pleadings Diaz alleges Lacombe wrongfully obtained custody of J.P.L., that J.P.L. was located in San Antonio, that Diaz had custody rights by virtue of a Mexican court order, and that Diaz sought J.P.L.'s immediate return. Construing Diaz's pleadings liberally, we conclude they were sufficient to invoke the trial court's subject matter jurisdiction under the Hague/ICARA. We further conclude the petition does not ask the trial court to rule on the merits of an ongoing custody dispute.

Next, Lacombe contends Diaz's petition did not trigger the enforcement jurisdiction of Chapter 152 of the Texas Family Code because she did not attach a custody order to her petition. Lacombe cites section 152.308(a) of the Texas Family Code, which provides, among other things, that certified copies of all orders sought to be enforced must be attached to a petition filed under subchapter D of Chapter 15. *See* TEX. FAM. CODE ANN. § 152.308(a) (West 2008). Even if we assume none of the exhibits attached to the original petition is a custody order, Lacombe cites no authority for the proposition that the failure to attach a certified copy of the order to be enforced deprives the trial court of subject matter jurisdiction in a Hague/ICARA action. And, at least one Texas court appears to have taken a contrary position, stating that the requirements under section 152.308(a) were procedural in nature. *In re S.J.O.B.G.*, 292 S.W.3d at 784-86. Additionally, in a Hague/ICARA action, a right of custody may arise by operation of law, by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of the child's habitual residence. *In re J.J.L.-P.*, 256 S.W.3d 363, 374 (Tex. App.—San Antonio 2008, no pet.). Thus, a custody order may not even exist in certain

Hague/ICARA actions. We conclude the trial court was not deprived of subject matter jurisdiction because a custody order was not attached to Diaz's petition.

### C.      Alleged Modification of the Controlling Custody Order

Lacombe argues that even if the trial court had subject matter jurisdiction, it exceeded the scope of its jurisdiction by modifying the controlling custody order of the Mexican court. According to Lacombe, the divorce decree that awarded custody to Lacombe is the controlling custody order in this case. Lacombe asserts the trial court effectively modified the divorce decree by concluding that the custody provisions in the divorce decree were no longer in effect.

The record shows the trial court did not modify the Mexican court's custody orders. At the hearing that resulted in the August 17, 2010, default order, Diaz took the position that the divorce decree was no longer in effect based on subsequent proceedings in Mexico. Diaz further asserted that she had a right of custody as evidenced by a June 21, 2005, order from a Mexican court. Thus, in its August 17, 2010, order, the trial court simply concluded that the divorce decree was no longer in effect, and Diaz had a right of custody pursuant to the Mexican court's subsequent order. We conclude the trial court did not exceed the scope of its jurisdiction by modifying a controlling custody order.

### D.      Effect of Custody Proceedings in Mexico

Finally, Lacombe argues the existence of "simultaneous" custody proceedings in the Mexican courts impeded the trial court's jurisdiction under Chapter 152 of the Texas Family Code. For support, Lacombe cites section 152.206(a) of the Family Code, which provides,

> a court of this state may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this chapter, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 152.207.

TEX. FAM. CODE ANN. § 152.206(a) (West 2008). Section 152.206(a) applies to situations in which simultaneous custody proceedings are commenced in two different states. *Filsinger v. Filsinger*, 225 S.W.3d 29, 33-34 (Tex. App.—El Paso 2005, no pet.). In other words, section 152.206(a) applies to situations in which a Texas court and a court of another state are both legitimately exercising custody jurisdiction at the same time. *In re McCoy*, 52 S.W.3d 297, 305 (Tex. App.—Corpus Christi 2001, orig. proceeding [mand. denied]). As previously stated, Diaz filed a Hague/ICARA action in the trial court alleging Lacombe wrongfully removed J.P.L. and seeking J.P.L.'s return; Diaz did not file a custody proceeding in the trial court. Thus, this was not a situation in which there were simultaneous custody proceedings in two courts. We, therefore, conclude section 152.206(a) does not apply here, and the trial court was not required to decline to exercise its jurisdiction under section 152.206(a).

## VIII. CONCLUSION

Although Diaz attempted to serve Lacombe with process, she failed to do so properly. The lack of proper service of process renders the August 17, 2010, order void. Thus, the trial court abused its discretion by not granting the special appearance based on a lack of service of process and by not vacating the August 17, 2010, order. The trial court further abused its discretion by "abating the implementation" of the August 17, 2010, order instead of vacating the August 17, 2010, order.

We conditionally grant the petition for a writ of mandamus. The trial court is ordered to (1) vacate the portion of its October 25, 2010, order denying the special appearance, and enter an order granting Lacombe's special appearance on grounds of lack of service of process; (2) vacate its August 17, 2010, order in its entirety; and (3) vacate the portion of its October 25, 2010, order

"abating the implementation" of the August 17, 2010, order. The writ will issue only in the unlikely event the trial court fails to comply with our order within fourteen days.

Karen Angelini, Justice